**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **LEADBETTER FAMILY LLP, and** | **§** | |
| **DEBORAH LEADBETTER,** | **§** | |
| **as Tax Matters Partner,** | **§** | |
| | **§** | |
| **Plaintiffs,** | **§** | |
| | **§** | **NO. 06-492T (Judge Hodges)** |
| **v.** | **§** | |
| | **§** | |
| **UNITED STATES OF AMERICA,** | **§** | |
| | **§** | |
| **Defendant.** | **§** | |

**MEMORANDUM IN SUPPORT OF UNITED STATES' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, AND UNITED STATES' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT, REGARDING LIMITATION PERIODS UNDER 26 U.S.C. §§ 6501(e)(1)(A) AND 6229(c)(2)**

This federal tax dispute centers on the 1999 sale of a Montana ranch (the "Ranch") by plaintiff Deborah Leadbetter, her husband, Dan Leadbetter (the "Leadbetters"), and various family members not before the Court, through Leadbetter Family LLP (the "Partnership") and other Leadbetter-controlled entities, for $6,700,000.[1] On the theory the adjusted basis of the Ranch was $5,465,378 when it was sold, the Partnership reported a $1,234,622 gain on its 1999 partnership return (Form 1065), and the Leadbetters, in turn, reported $971,248 as their share of that gain on their 1999 individual tax return (Form 1040). In fact, however, the alleged $5,465,378 basis of the Ranch is an economic illusion, invented through an artificial basis-inflation scheme commonly known in tax circles as a Son of Boss transaction, that overstates the

[1] Although reference is made herein to "partners," the "Partnership," related entities, and various events comprising the disputed transaction, the United States does not concede the legal existence of a viable partnership or the related entities. We reserve the right to establish at the trial on the merits that any or all of the legal entities and events described herein should be recharacterized, or set aside and ignored, for federal income tax purposes.

actual basis by at least $5,012,861. The United States contends the Partnership recognized a taxable gain of at least $6,247,483 from the sale of the Ranch, of which the Leadbetters' share was $4,914,753. As a result, the United States seeks to adjust the Partnership's reported gain and assess additional tax against the Leadbetters for the 1999 tax year.

The Leadbetters believe the three-year statute of limitations on assessment under 26 U.S.C. § 6501(a), and the three-year period relating to adjustments to partnership items under 26 U.S.C. § 6229(a), have both expired for the 1999 tax year. On that ground, the Leadbetters ask the Court to enter summary judgment in their favor.

But the Leadbetters' 1999 tax return omits a huge amount of gross income – nearly $4 million, or almost four times the gross income reported in their return – and discloses none of the material facts relating to the Leadbetters' artificial basis-inflation scheme. This entitles the United States to the six-year limitation period under § 6501(e)(1)(A), or, in the alternative, the six-year period under § 6229(c)(2). Therefore, the adjustment to the Partnership's reported gain and the assessment of additional tax against the Leadbetters are not time-barred.

All the material facts relating to the disputed transaction are undisputed or stipulated for summary judgment purposes. Likewise undisputed are the contents of the 1999 tax returns filed by the Leadbetters and the Partnership, which speak for themselves. As there are no genuine issues of material fact, and the United States is entitled to judgment as a matter of law for the reasons set forth herein, the Court should deny the Plaintiffs' motion for summary judgment and grant the United States' cross-motion for partial summary judgment regarding the limitation periods under §§ 6501(e)(1)(A) and 6229(c)(2).

# TABLE OF CONTENTS


BACKGROUND .................................................................................................. 3

Transactional Facts .......................................................................................... 3

Federal Income Tax Reporting by the
Partnership, Win-Del, and Valley Garden ............................................................ 5

Federal Income Tax Reporting by the Leadbetters .................................................. 8

Internal Revenue Service Examination of the Disputed Transaction ........................ 8

CONTENTIONS OF THE PARTIES ...................................................................... 8

Plaintiffs' Characterization of the Transaction ........................................................ 9

Step 1: The Short Sale ....................................................................................... 9

Step 2: The Outside "Basis Bump" ...................................................................... 9

Step 3: The Inside "Basis Bump" ........................................................................ 11

Step 4: Harvesting the Inflated Basis ................................................................... 14

United States' Characterization of the Transaction ................................................. 14

Plaintiffs' Contentions Regarding the Statute of Limitations .................................. 15

ISSUES PRESENTED ........................................................................................ 17

ARGUMENT .................................................................................................... 17

The United States Is Entitled to the Six-Year
Limitation Period under § 6501(e)(1)(A) with
Respect to the Leadbetters' 1999 Tax Year ............................................................ 17

1. *For Purposes of the Parties' Cross-Motions for Summary Judgment on Whether § 6501(e)(1)(A) Applies, Deborah and Dan Leadbetter Are the Only Taxpayers Properly Before the Court at this Time* ................. 19

2. *For Purposes of Applying § 6501(e)(1)(A) to the Leadbetters, Their 1999 Form 1040 Is the Only "Return" at Issue* .................................. 22

3. *The Leadbetters' 1999 Form 1040 Omits an Amount of Gross Income Exceeding 25 Percent of the Gross Income Stated in the Return* ................ 23

4. *The Leadbetters' 1999 Form 1040 Fails to Adequately Disclose the Nature and Amount of the Omitted Item* ................................. 25

5. *The Six-Year Period Under § 6501(e)(1)(A) Remains Open Because the Issuance of the FPAA Suspended the Running of that Period* .............................................. 35

6. *Even If the Court Takes the 12/31/99 Partnership Return into Consideration, There Still Is an Omission of Gross Income Exceeding 25 Percent of the Income Stated in the Return* ........................... 36

7. *Even If the Court Takes the 12/31/99 Partnership Return into Consideration, There Still Is No Adequate Disclosure of the Leadbetters' Artificial Basis-Inflation Scheme* .................................. 44

Additionally, or in the Alternative, the United States Is Entitled to the Six-Year Period under § 6229(c)(2) ............................................. 46

CONCLUSION .......................................................................................... 50

# TABLE OF AUTHORITIES

## CASE LAW

*ACM P'ship v. Commissioner*, 157 F.3d 231 (3d Cir. 1998) .................................. 33

*AD Global Fund, LLC v. United States*, 67 Fed.Cl. 657, 694 (2005), *aff'd*, __ F.3d __, 2007 WL 624366 (Fed. Cir. March 2, 2007) .............................. 36, 46

*Adler v. Commissioner*, 85 T.C. 535 (1985) .......................................................... 19, 32

*Barbados #6 Ltd. v. Commissioner*, 85 T.C. 900 (1985) ......................................... 20

*Black & Decker Corp. v. United States*, 436 F.3d 431 (4th Cir. 2006) ................... 33

*CC&F Western Operations Ltd. P'ship v. Commissioner*, 273 F.3d 402 (1st Cir. 2001), ........................................................................ 29, 32, 34-35

*Cardinal Life Ins. Co. v. United States*, 425 F.2d 1328 (5th Cir. 1970) .................. 30-31

*Cenex, Inc. v. United States*, 156 F.3d 1377 (Fed. Cir. 1998) ................................ 40

*Chef's Choice Produce Ltd. v. Commissioner*, 95 T.C. 388 (1990) ........................ 20

*COLM Producer, Inc. v. United States*, 460 F.Supp.2d 713 (N.D. Tex. 2006) ........ 15

*Colony, Inc. v. Commissioner*, 26 T.C. 30 (1956), *aff'd*, 244 F.2d 75 (6th Cir. 1957), *rev'd*, 357 U.S. 28 (1958) ................................. 44

*Coltec Industries, Inc. v. United States*, 454 F.3d 1340 (Fed. Cir. 2006) ................ 32-33

*Commissioner v. Danielson*, 378 F.2d 771 (3d Cir. 1967) ...................................... 32

*Commissioner v. Groetzinger*, 480 U.S. 23 (1987) ................................................. 43

*Commissioner v. Korell*, 339 U.S. 619 (1950) ........................................................ 39

*Commissioner v. Soliman*, 506 U.S. 168 (1993) ..................................................... 39

*Connelly v. Commissioner*, T.C. Memo. 1982-644, 1982 WL 10937 (1982) ........... 39

*Courtney v. Commissioner*, 28 T.C. 658 (1957) ..................................................... 43

*Crane v. Commissioner*, 331 U.S. 1 (1947) ............................................................ 39

*Davis v. Hightower*, 230 F.2d 549 (5th Cir. 1956) .................................................. 27-33

*Ehrman v. Commissioner*, 120 F.2d 607 (9th Cir. 1941) ........................................ 42

*Estate of Frane v. Commissioner*, 98 T.C. 341 (1992),
*aff'd in part and rev'd in part*, 998 F.2d 567 (8th Cir. 1993) .................................. 34

*Estate of Fry v. Commissioner*, 88 T.C. 1020 (1987) ............................................. 34

*Estate of Klein v. Commissioner*, 537 F.2d 701 (2d Cir. 1976) ............................... 43

*Estate of Whitlock v. Commissioner*, 59 T.C. 490 (1972) ....................................... 34

*Fields v. Commissioner*, T.C. Memo. 1981-653, 1981 WL 11153 (1981) .............. 43

*Goodman v. United States*, 390 F.2d 915 (Ct.Cl. 1968) ......................................... 42-43

*Grant Oil Tool Co. v. United States*, 381 F.2d 389 (Ct.Cl. 1967) ........................... 41

*Grapevine Imports, Ltd. v. United States*, 71 Fed.Cl. 324 (2006) ........................... 19, 32, 36

*Gregory v. Helvering*, 293 U.S. 465 (1935) ............................................................ 32

*Higgins v. Commissioner*, 312 U.S. 212 (1941) ...................................................... 43

*Hoffman v. Commissioner*, 119 T.C. 140 (2002) ..................................................... 18-19, 32

*In re CM Holdings, Inc.*, 301 F.3d 96 (3d Cir. 2002) ............................................. 32

*In re G-I Holdings Inc.*, 2006 WL 2595264 (D.N.J. 2006) ..................................... 19, 32, 34-35

*In re G-I Holdings Inc.*, 2006 WL 3511150 (D.N.J. 2006) ..................................... 45

*Insulglass Corp. v. Commissioner*, 84 T.C. 203 (1985) .......................................... 34, 38, 43

*Ketchum v. Commissioner*, 697 F.2d 466 (2d Cir. 1982),
*rev'g Ketchum v. Commissioner*, 77 T.C. 1204 (1981) ........................................... 43

*Lazarus v. United States*, 172 F.Supp. 421 (Ct.Cl. 1959) ....................................... 43

*Lerman v. Commissioner*, 939 F.2d 44 (3d Cir. 1991) ............................................ 32

*Lewis v. United States*, 389 F.2d 818 (Ct.Cl. 1968) ................................................ 42

*Long Term Capital Holdings v. United States*,
330 F. Supp.2d 122 (D. Conn. 2004),
*aff'd by unpublished opinion*, 2005 WL 2365336 (2d Cir. 2005) ........................... 33

*Lynch v. Alworth-Stephens Co.*, 267 U.S. 364 (1925) ............................................ 39

*Malat v. Riddell*, 383 U.S. 569 (1966) .................................................................... 39

*Miller v. Commissioner*, T.C. Memo. 1992-612, 1992 WL 279823 (1992) ............ 34-35

*Neonatology Assocs., P.A. v. Commissioner*,
115 T.C. 43 (2000), *aff'd*, 299 F.3d 221 (3d Cir. 2002) .......................................... 33

*Nicole Rose Corp. v. Commissioner*, 320 F.3d 282 (2d Cir. 2003) ......................... 33

*Northern Ind. Pub. Serv. Co. v. Commissioner*, 101 T.C. 294 (1993) ..................... 23

*Old Colony R. Co. v. Commissioner*, 284 U.S. 552 (1932) ..................................... 39

*Patterson v. United States*, 198 Ct.Cl. 543 (1972) .................................................. 43

*Phinney v. Chambers*, 392 F.2d 680 (5th Cir. 1968) ............................................... 31, 34

*Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15 (2000) ....................................... 19

*Rhone-Poulenc Surfactants and Specialties, L.P. v. Commissioner*,
114 T.C. 533, 551-57 (2000) ...................................................................................... 20, 36

*Rodman v. Commissioner*, T.C. Memo. 1973-277, 1973 WL 2454 (1973) ............. 43

*Salina P'ship LP v. Commissioner*,
T.C. Memo. 2000-352, 2000 WL 1700928 (2000) ................................................... 15

*Schneider v. Commissioner*, T.C. Memo. 1985-139,
1985 WL 14754, 49 T.C.M. (CCH) 1032, 1034 (1985) ............................ 23, 37, 39, 42-43

*Shaheen v. Commissioner*, T.C. Memo. 1987-486, 1987 WL 47499 (1987) ........... 43

*Shaw v. Commissioner*, T.C. Memo. 2003-111, 2003 WL 1903446 (2003) ............ 43

*Stafford v. Commissioner*, T.C. Memo. 1992-637, 1992 WL 314028 (1992) .......... 43

*TIFD III-E, Inc. v. United States*, 459 F.3d 220 (2d Cir. 2006) ............................... 33

*Taylor v. United States*, 417 F.2d 991 (5th Cir. 1969) .......................................... 31

*Union Bank v. United States*, 285 F.2d 126 (Ct.Cl. 1961) ..................................... 42

*Walker v. Commissioner*, 46 T.C. 630 (1966) ....................................................... 27, 30

*Waller v. Commissioner*, T.C. Memo. 1991-183, 1991 WL 62483 (1991) ............. 43

*Wolk v. United States*, 1984 WL 706 (S.D.N.Y. 1984) .......................................... 43

STATUTES, REGULATIONS, AND RULES

Pub. L. No. 105-34, § 1284, 111 Stat. 788, 1038 (1997) ....................................... 30

26 U.S.C. § 61 ............................................................................................. 23, 37

26 U.S.C. § 275 (Internal Revenue Code of 1939) ................................................ 28-29

26 U.S.C. § 701 ........................................................................................... 14, 22

26 U.S.C. § 702 ........................................................................................... 14, 23, 38

26 U.S.C. § 706 ........................................................................................... 11

26 U.S.C. § 708 ........................................................................................... 11

26 U.S.C. § 722 ........................................................................................... 9

26 U.S.C. § 723 ........................................................................................... 12

26 U.S.C. § 733 ........................................................................................... 10

26 U.S.C. § 734 ........................................................................................... 5-6

26 U.S.C. § 743 ........................................................................................... 5-6, 13-14

26 U.S.C. § 754 ........................................................................................... 5-6, 12-13

26 U.S.C. § 755 ........................................................................................... 14

26 U.S.C. § 752 ........................................................................................... 10, 15, 35

26 U.S.C. § 1231 ......................................................................................... 40-41

26 U.S.C. §§ 1361-1377 .......................................................................... 3

26 U.S.C. § 6013 ...................................................................................... 19, 43

26 U.S.C. § 6072 ...................................................................................... 16, 47

26 U.S.C. § 6223 ...................................................................................... 8

26 U.S.C. § 6226 ...................................................................................... 3, 20-21

26 U.S.C. § 6229 ...................................................................... 1-2, 14, 16-17, 46-49

26 U.S.C. § 6501 ...................................................................................... *passim*

26 U.S.C. § 7701 ...................................................................................... 22-23

26 C.F.R. § 1.61-3(a) ................................................................................ 41-42

26 C.F.R. § 1.61-6(a) ................................................................................ 37

26 C.F.R. § 1.471-1 .................................................................................. 40

26 C.F.R. § 1.708-1 .................................................................................. 11, 13

26 C.F.R. § 1.755-1 .................................................................................. 14

26 C.F.R. § 1.761-1 .................................................................................. 13

OTHER AUTHORITIES

Rev. Rul. 95- 26, 1995-14 I.R.B. 6, 1995 WL 95470 ............................................. 15

IRS Chief Counsel Notice 2003-020, IRS CCN CC-2003-020,
2003 WL 24016805 (June 25, 2003) ........................................................ 9

IRS Notice 2000-44, 2000-36 I.R.B. 255, 2000 WL 1138430 (Sept. 5, 2000) ......... 9

McKee, Nelson & Whitmire,
*Federal Taxation of Partnerships and Partners* (3d ed. 2007) ............................... 13-14

# BACKGROUND

The undisputed material facts are summarized below.[2]

## **Transactional Facts**

Valley Garden Ranch, Inc. ("Valley Garden") operated a ranch in Ennis, Montana (the "Ranch") from 1951 to 1999. Since 1987, plaintiff Deborah Leadbetter and her husband, Dan Leadbetter, have owned 78.665 percent of Valley Garden's outstanding stock. Valley Garden has been an S corporation for federal income tax purposes since 1988.[3] (Pl. Fact ¶¶ 3, 7-8.) At all times relevant to this matter, Valley Garden was engaged in the trade or business of ranching, and was not engaged in the trade or business of buying and selling ranches. (US Fact ¶ 44.)

On June 24, 1998, Leadbetter Family LLP (the "Partnership") was formed as a Montana limited partnership. Deborah Leadbetter and various members of her family made cash contributions to the Partnership for interests in the Partnership. (Pl. Fact ¶¶ 9-10.) Deborah Leadbetter is the tax matters partner ("TMP") of the Partnership. (Pl. Fact ¶ 4.)[4]

On July 10, 1998, Valley Garden entered into a short sale of U.S. Treasury Notes dated June 30, 1998, with a total face amount of $5,000,000, and bearing a 5.375 percent coupon

---

[2] *See* Plaintiffs' Proposed Findings of Uncontroverted Fact, filed February 1, 2007 ("Pl. Fact"); Declaration of Deborah Leadbetter in Support of Plaintiffs' Motion for Summary Judgment, dated January 25, 2007 ("Leadbetter Decl."); United States' Response to Plaintiffs' Proposed Findings of Uncontroverted Fact and Additional Proposed Findings of Uncontroverted Fact, submitted herewith ("US Fact"); Stipulation dated March 21, 2007 ("Stip.").

[3] *See generally* 26 U.S.C. §§ 1361-1377. Unless otherwise stated, all section references herein are to the Internal Revenue Code of 1986, as amended and in effect during the tax years involved in this dispute.

[4] *See also* Complaint filed June 30, 2006 (designating Deborah Leadbetter as Tax Matters Partner); 26 U.S.C. § 6226(a) (authorizing tax matters partner to file petition for readjustment of partnership items).

interest payment due on June 30, 2000. Valley Garden received cash proceeds of $5,256,338.48 from the short sale. (Pl. Fact ¶ 12-13.)

On July 13, 1998, Valley Garden transferred the short position and the cash proceeds from the short sale to the Partnership. Three days later, on July 16, 1998, the Partnership closed the short sale at a cost of $5,012,861.16. (Pl. Fact ¶¶ 14-15.)

Effective as of December 31, 1998, Valley Garden contributed the Ranch (with the exception of Valley Garden Golf Village and 31 acres near Valley Garden Golf Village) to the Partnership in exchange for a 99.97992 percent interest in the Partnership. (Pl. Fact ¶ 11.) As of January 1, 1999, the Partnership had the following ownership. (Pl. Fact ¶ 16.)

| | |
|---|---:|
| Valley Garden | 99.97992% |
| Deborah Leadbetter | 0.00859% |
| Dan Leadbetter | 0.00721% |
| Other persons | 0.00428% |
| Total | 100.00000% |

On June 30, 1999, Valley Garden transferred a 98.47992 percent interest in the Partnership to Win-Del, LLP ("Win-Del"), a newly-formed partnership, retaining a 1.5 percent interest in the Partnership. At approximately the same time, Deborah and Dan Leadbetter each contributed $250.00 to Win-Del for an interest in Win-Del. (Pl. Fact ¶¶ 17-18.)

On July 15, 1999, the Partnership sold the Ranch for $6,700,000. (Pl. Fact ¶ 19.) At all times relevant to this matter, the Partnership was engaged in the trade or business of ranching, and was not engaged in the trade or business of buying and selling ranches. (US Fact ¶ 43.)

According to the Schedules K-1 annexed to the Form 1065, U.S. Partnership Return of Income, filed by Win-Del for its taxable period beginning on or about June 30, 1999 and ending on December 31, 1999, Win-Del had the following ownership during that period.

| | |
|---|---|
| Valley Garden | 99.987333% |
| Deborah Leadbetter | 0.006334% |
| Dan Leadbetter | 0.006334% |
| Total | 100.000000%[5] |

According to the Schedules K-1 annexed to the Form 1065, U.S. Partnership Return of Income, filed by the Partnership for its taxable period beginning on July 1, 1999 and ending on December 31, 1999, the Partnership had the following ownership during that period.

| | |
|---|---|
| Valley Garden | 1.50000% |
| Deborah Leadbetter | 0.04595% |
| Dan Leadbetter | 0.03852% |
| Win-Del | 98.39270% |
| Other persons | 0.02283% |
| Total | 100.00000%[6] |

**Federal Income Tax Reporting by the**
**Partnership, Win-Del, and Valley Garden**

The Partnership filed its Form 1065, U.S. Partnership Return of Income, for its taxable period beginning on January 1, 1999 and ending on June 30, 1999 (the "6/30/99 Partnership Return"), with the IRS on or about March 31, 2000. (Stip. ¶ 11.) In a statement attached to the 6/30/99 Partnership Return, the Partnership made an election under 26 U.S.C. § 754 to adjust the basis of partnership property as prescribed by 26 U.S.C. § 734(b), in the case of a distribution of property, and 26 U.S.C. § 743(b), in the case of a transfer of a partnership interest.[7]

The Partnership filed its Form 1065, U.S. Partnership Return of Income, for its taxable period beginning on July 1, 1999 and ending on December 31, 1999 (the "12/31/99 Partnership

[5] Leadbetter Decl. Ex. B, Schedules K-1. Due to an immaterial rounding difference (0.000001%), the separate ownership percentages above do not sum to 100 percent.

[6] Leadbetter Decl. Ex. A, Schedules K-1.

[7] Stip. ¶ 11, Ex. E (statement titled "Election to Adjust Basis of Partnership Property").

Return"), with the IRS on April 15, 2000. (Stip. ¶ 7.)[8] In a statement attached to the 12/31/99 Partnership Return, the Partnership made an election under 26 U.S.C. § 754 to adjust the basis of partnership property as prescribed by 26 U.S.C. § 734(b), in the case of a distribution of property, and 26 U.S.C. § 743(b), in the case of a transfer of a partnership interest.[9] On line 6 of Schedule K of the 12/31/99 Partnership Return, and line 6 of IRS Form 4797, Sale of Business Property, attached to the 12/31/99 Partnership Return, the Partnership reported the gain on the July 15, 1999 sale of the Ranch as gain from the sale of property used in a trade or business. On the Form 4797, the Partnership computed the gain as follows. (Pl. Fact ¶¶ 21-24.)[10]

| | |
|---|---|
| Gross sales price | $6,700,000 |
| Adjusted basis of property | (5,465,378) |
| Gain | $1,234,622 |

The 12/31/99 Partnership Return included Schedules K-1 that were issued to the partners of the Partnership. Line 6 of each Schedule K-1 set forth each partner's proportionate share of the Partnership's reported gain from the sale of the Ranch, as follows. (Pl. Fact ¶ 25.)[11]

| | |
|---|---|
| Deborah Leadbetter | $ 567 |
| Dan Leadbetter | 476 |
| Valley Garden | 18,519 |
| Win-Del | 1,214,778 |
| Other persons | 282 |
| Total | $1,234,622 |

Win-Del filed its Form 1065, U.S. Partnership Return of Income, for its taxable period

---

[8] *See also* Leadbetter Decl. ¶ 22, Ex. C.

[9] Leadbetter Decl. ¶ 19, Ex. A (statement titled "Election to Adjust Basis of Partnership Property"); Stip. ¶ 11.

[10] *See also* Leadbetter Decl. Ex. A, Form 4797, lines 20, 23, 24.

[11] *See also* Leadbetter Decl. Ex. A, Schedules K-1.

beginning on or about June 30, 1999 and ending on December 31, 1999 (the "Win-Del Return"), with the IRS on or before April 17, 2000. The Win-Del Return included Schedules K-1 that were issued to the partners of Win-Del. Line 6 of each Schedule K-1 set forth each partner's proportionate share of Win-Del's share of the Partnership's reported gain from the sale of the Ranch, as follows. (Pl. Fact ¶¶ 26-27.)[12]

| | |
|---|---|
| Deborah Leadbetter | $ 77 |
| Dan Leadbetter | 77 |
| Valley Garden | 1,214,624 |
| Total | $1,214,778 |

Valley Garden filed its Form 1120S, U.S. Income Tax Return for S Corporation, for its 1999 taxable year (the "Valley Garden Return"), with the IRS on or before April 17, 2000. The Valley Garden Return included Schedules K-1 that were issued to the shareholders of Valley Garden. Line 5 of each Schedule K-1 set forth each shareholder's proportionate share of Valley Garden's share of the Partnership's reported gain from the sale of the Ranch (both directly from the Partnership and from Win-Del), as follows. (Pl. Fact ¶¶ 28-29.)[13]

| | |
|---|---|
| Deborah Leadbetter | $ 527,858 |
| Dan Leadbetter | 442,193 |
| Other shareholders | 263,092 |
| Total | $1,233,143 |

**Federal Income Tax Reporting by the Leadbetters**

Deborah and Dan Leadbetter (collectively, the "Leadbetters") filed their joint Form 1040, U.S. Individual Income Tax Return, on April 15, 2000. (Stip. ¶ 10.) On Line 11 of Schedule D,

[12] *See also* Stip. ¶ 8; Leadbetter Decl. ¶ 20, Ex. B (Win-Del Form 1065), Schedule K, line 6, and Schedules K-1, line 6.

[13] *See also* Stip. ¶ 9; Leadbetter Decl. ¶ 21, Ex. C (Valley Garden Form 1120S), Schedule K, line 5, and Schedules K-1, line 5.

Capital Gains and Losses, and Form 4797, Sales of Business Property, attached to their Form 1040, the Leadbetters reported $971,248 as their share of the Partnership's reported gain from the July 15, 1999 sale of the Ranch.[14]

**Internal Revenue Service Examination of the Disputed Transaction**

On April 6, 2006, the IRS sent the Partnership and its partners a Notice of Final Partnership Administrative Adjustment ("FPAA"), pursuant to 26 U.S.C. § 6223(a)(2). (Pl. Fact ¶ 35.) Among other things, the FPAA set forth the Service's determination that the Partnership's gain on the July 15, 1999 sale of the Ranch was not $1,234,622, as reported by the Partnership, but $6,724,000. (Complaint Ex. A at 6, 8; Stip. ¶ 4.)

## CONTENTIONS OF THE PARTIES

Via the chain of events beginning with the July 10, 1998 short sale of Treasury notes and culminating in the Partnership's sale of the Ranch on July 15, 1999, the Leadbetters executed an artificial basis-inflation scheme that the IRS refers to as a Son of Boss tax shelter.[15] We briefly summarize below the parties' conflicting views regarding this transaction.

---

[14] *See* Leadbetter Decl. Ex. D, Schedule D and Form 4797. As detailed above, this amount is comprised of the following:

| | |
|---|---|
| Deborah Leadbetter, directly from Partnership | $ 567 |
| Dan Leadbetter, directly from Partnership | 476 |
| Deborah Leadbetter, indirectly through Win-Del | 77 |
| Dan Leadbetter, indirectly through Win-Del | 77 |
| Deborah Leadbetter, indirectly through Valley Garden | 527,858 |
| Dan Leadbetter, indirectly through Valley Garden | 442,193 |
| Total | $ 971,248 |

[15] *See* IRS Chief Counsel Notice 2003-020, IRS CCN CC-2003-020, *available at* 2003 WL 24016805 (June 25, 2003) (general description of Son of Boss tax shelters); IRS Notice 2000-44, 2000-36 I.R.B. 255, *available at* 2000 WL 1138430 (September 5, 2000) (alerting taxpayers that artificial basis-inflation schemes like the Leadbetters' transaction are improper).

**Plaintiffs' Characterization of the Transaction**

While the Leadbetters' brief neglects to address the tax treatment of the transaction, this artificial basis-inflation scheme, as we understand it, has four basic steps.

## Step 1: The Short Sale

As noted, on July 10, 1998, Valley Garden entered into a short sale of U.S. Treasury Notes with a total face amount of $5,000,000, receiving cash proceeds of $5,256,338.48, and incurring an offsetting obligation to close the short sale. The short sale set the stage for the next step, executed three days later – the outside "basis bump."

## Step 2: The Outside "Basis Bump"

On July 13, 1998, Valley Garden transferred the short position and the $5,256,338.48 of cash proceeds to the Partnership. Valley Garden thus acquired a basis in its interest in the Partnership – "outside" basis – equal to $5,256,338.48. 26 U.S.C. § 722.[16]

But what of the Partnership's obligation to close the short sale? Clearly the Partnership had this obligation Only three days later, on July 16, 1998, the Partnership closed the short sale at a cost of $5,012,861.16.

---

[16] Section 722 provides:

> The basis of an interest in a partnership acquired by a contribution of property, including money, to the partnership shall be the amount of such money and the adjusted basis of such property to the contributing partner at the time of the contribution increased by the amount (if any) of gain recognized under section 721(b) to the contributing partner at such time.

Ordinarily, when a partnership assumes a partner's liability, the assumption is deemed a distribution of money to the partner by the partnership. 26 U.S.C. § 752(b).[17] A distribution of money, in turn, decreases the partner's basis in her partnership interest by the amount of money distributed. 26 U.S.C. § 733.[18]

If the Leadbetters treated the Partnership's obligation to close the short sale as a liability under § 752(b), then Valley Garden was required to reduce its outside basis in its interest in the Partnership by at least $5,012,861.16 – the amount paid by the Partnership to close the short position – pursuant to § 733. In that event, Valley Garden's outside basis in its interest in the Partnership would be only $243,477.32 ($5,256,338.48 minus $5,012,861.16), not $5,256,338.48. The Leadbetters do not take this position, however.

Rather than accounting for both sides of the short sale, the Leadbetters accord economic effect only to the cash sale proceeds the Partnership received, while disregarding the Partnership's offsetting obligation to close the short position. Under this one-sided view, Valley Garden acquired a $5,256,338.48 outside basis in its interest in the Partnership, but the

---

[17] Section 752(b) provides:

> Decrease in partner's liabilities.– Any decrease in a partner's share of the liabilities of a partnership, or any decrease in a partner's individual liabilities by reason of the assumption by the partnership of such individual liabilities, shall be considered as a distribution of money to the partner by the partnership.

[18] Section 733 provides:

> In the case of a distribution by a partnership to a partner other than in liquidation of a partner's interest, the adjusted basis to such partner of his interest in the partnership shall be reduced (but not below zero) by (1) the amount of any money distributed to such partner, and (2) the amount of the basis to such partner of distributed property other than money, as determined under section 732.

Partnership's obligation to close the short position simply vanishes into thin air.

## Step 3: The Inside "Basis Bump"

Having "bumped up" Valley Garden's outside basis in its interest in the Partnership by over $5 million, the Leadbetters took steps to "bump up" the basis of the Ranch. First, the Leadbetters caused Valley Garden to put the Ranch in the Partnership, effective December 31, 1998, in exchange for a 99.97992 percent interest in the Partnership.

Next, on June 30, 1999, Valley Garden transferred a 98.47992 percent interest in the Partnership to Win-Del. This ownership transfer caused the Partnership to terminate for tax purposes, pursuant to 26 U.S.C. § 708(b)(1)(B).[19] As a result, the Partnership's taxable year ended. 26 U.S.C. § 706(c)(1); 26 C.F.R. § 1.708-1(b)(1)(ii). Additionally, Treas. Reg. § 1.708-1(b)(4) provides in pertinent part:

> If a partnership is terminated by a sale or exchange of an interest, the following is deemed to occur: The partnership contributes all of its assets and liabilities to a new partnership in exchange for an interest in the new partnership; and, immediately thereafter, the terminated partnership distributes interests in the new partnership to the purchasing partner and the other remaining partners in proportion to their respective interests in the terminated partnership in liquidation of the terminated partnership, either for the continuation of the business by the new partnership or for its dissolution and winding up.

26 C.F.R. § 1.708-1(b)(4).

---

[19] Section 708(b)(1)(B) provides:

Termination.– (1) General rule.– For purposes of subsection (a), a partnership shall be considered as terminated only if –

* * * * *

(B) within a 12-month period there is a sale or exchange of 50 percent or more of the total interest in partnership capital and profits.

In other words, the "old" Partnership is deemed to have contributed all of its assets and liabilities to a "new" Partnership on June 30, 1999. Immediately thereafter, the "old" Partnership is deemed to distribute interests in the "new" Partnership to Win-Del and the other remaining partners (Valley Garden, the Leadbetters, and relatives of the Leadbetters) in proportion to their respective interests in the "old" Partnership. These deemed events enabled Win-Del to "bump up" the Partnership's "inside" basis in its assets – namely, the Ranch – to correspond with the inflated outside basis of the 98.47992 percent Partnership interest that Win-Del received from Valley Garden (previously "bumped up" via the Leadbetters' one-sided accounting for Valley Garden's transfer of the short sale position to the Partnership, *supra*).[20]

To explain, in its partnership return for the short tax year ended June 30, 1999,[21] the "old" Partnership made an election under 26 U.S.C. § 754. Similarly, in its partnership return for the short tax year ended December 31, 1999, the "new" Partnership made a § 754 election. In pertinent part, section 754 provides:

> If a partnership files an election, in accordance with regulations prescribed by the Secretary, the basis of partnership property shall be adjusted, in the case of a distribution of property, in the manner provided in section 734 and, in the case of a transfer of a partnership interest, in the manner provided in section 743. Such an election shall apply with respect to all distributions of property by the partnership and to all transfers of interests in the partnership during the taxable year with respect to which such election was filed and all subsequent taxable years.

26 U.S.C. § 754.

---

[20] Pursuant to 26 U.S.C. § 723, Win-Del succeeded to Valley Garden's outside basis in the Partnership interest.

[21] As previously noted, the Partnership filed two short-period returns for the 1999 calendar year, one as the "old" Partnership that terminated on June 30, 1999, and the other as the "new" Partnership deemed created on July 1, 1999.

As to the combined effect of the "old" Partnership's deemed termination, the "new" Partnership's deemed creation, and the adjustment to the Partnership's inside basis in its assets pursuant to the § 754 election, Treas. Reg. § 1.708-1(b)(5) provides:

> If a partnership is terminated by a sale or exchange of an interest in the partnership, a section 754 election (including a section 754 election made by the terminated partnership on its final return) that is in effect for the taxable year of the terminated partnership in which the sale occurs, applies with respect to the incoming partner. Therefore, the bases of partnership assets are adjusted pursuant to sections 743 and 755 prior to their deemed contribution to the new partnership.

26 C.F.R. § 1.708-1(b)(5); *see also* 26 C.F.R. § 1.761-1(e) ("[T]he deemed distribution of an interest in a new partnership by a partnership that terminates under section 708(b)(1)(B) is treated as an exchange of the interest in the new partnership for purposes of section 743.").[22]

Under the foregoing rules, pursuant to the § 754 election, the "new" Partnership adjusted the inside basis of its assets upward in the manner prescribed by 26 U.S.C. § 743. As in effect in 1999, section 743(b)(1) provided:

> In the case of a transfer of an interest in a partnership by sale or exchange or upon the death of a partner, a partnership with respect to which the election provided in section 754 is in effect shall –
>
> (1) increase the adjusted basis of the partnership property by the excess of the basis to the transferee partner of his interest in the partnership over his proportionate share of the adjusted basis of the partnership property . . . .

26 U.S.C. § 743(b)(1). Thus, applying § 743(b)(1), the "new" Partnership inflated its inside basis in the Ranch by over $5 million, corresponding to Win-Del's inflated outside basis in its interest in the Partnership (caused by the earlier "basis bump" arising from Valley Garden's

[22] *See generally* McKee, Nelson & Whitmire, *Federal Taxation of Partnerships and Partners* ¶ 12.05[2][e] (3d ed. 2007) (hereinafter, "McKee").

transfer of the short position to the Partnership, *supra*).[23]

## Step 4: Harvesting the Inflated Basis

After inflating the basis of the Ranch by over $5 million through the paper shuffling outlined above, the Leadbetters caused the Partnership to sell the Ranch on July 15, 1999 for $6,700,000. The Partnership reported a $1,234,622 gain on the 12/31/99 Partnership Return, understating the true economic gain on the sale of the Ranch by over $5 million.

On their 1999 income tax return (Form 1040), the Leadbetters reported $971,248 as their share of the gain reported by the Partnership.[24] As discussed below, had the Partnership recognized the true economic gain on the sale of the Ranch, the Leadbetters' share of the gain would have increased to nearly $5 million.

**United States' Characterization of the Transaction**

We will not burden the Court at this time with a exhaustive list of the reasons the Leadbetters' artificial basis-inflation scheme is invalid.[25] For purposes of the parties' cross-motions for summary judgment on the statute of limitations issues under 26 U.S.C. §§ 6229(c)(2) and 6501(e)(1)(A), it suffices to note that two key matters are stipulated.

---

[23] Section 743(c) provides that the "allocation of basis among partnership properties where [section 743(b)] is applicable shall be made in accordance with the rules provided in section 755." 26 U.S.C. § 743(c). As the Ranch evidently was the Partnership's only significant asset, it appears that the intricate basis allocation rules under § 755 and 26 C.F.R. § 1.755-1 are immaterial to the present discussion. *See generally* McKee ¶ 24.04[1].

[24] Partnerships are not subject to income taxation; rather, partners are taxed on their distributive shares of partnership income. *See* 26 U.S.C. §§ 701, 702.

[25] *See generally* Complaint Ex. A (FPAA issued by IRS to the Partnership).

- The short position assumed by the Partnership on July 13, 1998 was a liability within the meaning of 26 U.S.C. § 752.[26] (US Fact ¶ 47; Stip. ¶ 5.)
- The adjusted basis of the Ranch at the time of its sale on July 15, 1999, reported as $5,465,378 by the Partnership, must be reduced by $5,012,861.16 in the event the Court sustains the United States' position in this matter.[27] (US Fact ¶ 48; Stip. ¶ 6.)

A final determination regarding these matters must await the Court's examination of the merits. Whether the merits are reached depends on whether the statute of limitations on assessment of tax against the Leadbetters for the 1999 tax year remains open. We turn below to the Leadbetters' contentions regarding the statute of limitations.

**Plaintiffs' Contentions Regarding the Statute of Limitations**

On April 15, 2000, the Partnership filed the 12/31/99 Partnership Return, and the Leadbetters filed their 1999 federal income tax return (Form 1040) on April 15, 2000. Five years and 356 days later, on April 6, 2006, the IRS issued the FPAA setting forth its redetermination of the Partnership's gain on the sale of the Ranch.

Section 6501(a) provides generally that "the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed." 26 U.S.C. § 6501(a). Relying on this general rule, the Leadbetters argue the time for assessing any tax against them for the 1999 tax

---

[26] *See COLM Producer, Inc. v. United States*, 460 F.Supp.2d 713 (N.D. Tex. 2006) (addressing basis-inflation scheme similar to Leadbetter transaction and holding that partnership's obligation to close short sale of Treasury notes is liability under § 752); *Salina P'ship LP v. Commissioner*, T.C. Memo. 2000-352, 2000 WL 1700928, at *12 (2000) (to same effect); Rev. Rul. 95- 26, 1995-14 I.R.B. 6, 1995 WL 95470.

[27] The United States believes the proper basis reduction may exceed $5,012,861.16, and reserves the right to conduct discovery regarding the Leadbetters' allegations concerning the basis of the Ranch and related matters.

year expired on April 15, 2003.[28] (Pl. Memo 7.) It is undisputed that the IRS assessed no additional tax against the Leadbetters for the 1999 tax year, relating to the Partnership's sale of the Ranch, before the three-year period under § 6501(a) expired.

The Leadbetters also direct the Court's attention to § 6229(a), which provides:

> [T]he period for assessing any tax . . . with respect to any person which is attributable to any partnership item (or affected item) for a partnership taxable year shall not expire before the date which is 3 years after the later of– (1) the date on which the partnership return for such taxable year was filed, or (2) the last day for filing such return for such year (determined without regard to extensions).

26 U.S.C. § 6229(a). It is undisputed that the three-year period under § 6229(a) expired on April 17, 2003, or three years after the date on which the 12/31/99 Partnership Return was due under 26 U.S.C. 6072(a). Therefore, the Leadbetters contend the IRS cannot assess any additional tax attributable to "partnership items" under 26 U.S.C. § 6231(a)(3), including the additional tax attributable to the Partnership's sale of the Ranch, for the 1999 tax year. (Pl. Memo 7.)

As the applicable three-year limitation periods expired before the IRS made any assessment of additional tax for the 1999 tax year against the Leadbetters, the United States relies on the six-year limitation period under 26 U.S.C. § 6501(e)(1)(A), or, alternatively, the six-year period under 26 U.S.C. § 6229(c)(2). The Leadbetters contend that neither six-year period applies. As we explain below, the Leadbetters are wrong.

---

[28] The Leadbetters' opening brief states that the three-year period under § 6501(a) expired on April 17, 2003. After the Leadbetters filed their opening brief, the United States verified that IRS records reflect that the Leadbetters' 1999 Form 1040 was filed on April 15, 2000. We have provided copies of these IRS records to the Leadbetters. Based on the actual return filing date, the three-year period under § 6501(a) expired on April 15, 2003, not April 17, 2003, a difference that is immaterial to the present dispute.

# ISSUES PRESENTED

1. Does the statute of limitations on assessment of additional tax against the Leadbetters for the 1999 tax year remain open because the six-year limitation period under § 6501(e)(1)(A) applies?

2. Alternatively, does the statute of limitations remain open because the six-year period under § 6229(c)(2) applies?

For the reasons set forth below, the Court should answer both questions in the affirmative, deny the Leadbetters' motion for summary judgment, and grant the United States' cross-motion for partial summary judgment regarding the six-year limitation periods.

# ARGUMENT

We begin by showing that, despite the Leadbetters' arguments to the contrary, the six-year limitation period under § 6501(e)(1)(A) remains open. This brief's concluding section addresses the six-year period under § 6229(c)(2).

## The United States Is Entitled to the Six-Year Limitation Period under <u>§ 6501(e)(1)(A) with Respect to the Leadbetters' 1999 Tax Year</u>.

Section 6501(e)(1)(A) provides:

> If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 6 years after the return was filed. For purposes of this subparagraph –
>
> (i) In the case of a trade or business, the term "gross income" means the total of the amounts received or accrued from the sale of goods or services (if such amounts are required to be shown on the return) prior to diminution by the cost of such sales or services; and

> (ii) In determining the amount omitted from gross income, there shall not be taken into account any amount which is omitted from gross income stated in the return if such amount is disclosed in the return, or in a statement attached to the return, in a manner adequate to apprise the Secretary of the nature and amount of such item.

26 U.S.C. § 6501(e)(1)(A). In a nutshell, if the taxpayer's return omits an amount of gross income exceeding 25 percent of the gross income stated in the return, and the return fails to adequately disclose the nature and amount of the omitted item, the United States has six years from the date on which the return is filed, rather than the usual three years under § 6501(a), in which to assess income tax against the taxpayer.

The bar of the statute of limitations is an affirmative defense and, having raised this defense, the Leadbetters have the burden of proving it. *Hoffman v. Commissioner*, 119 T.C. 140, 146 (2002) (addressing six-year period under § 6501(e)(1)(A)). To be specific, the Leadbetters initially must establish that the IRS did not assess the tax due for the 1999 tax year within the three-year statute of limitations under § 6501(a). If the Leadbetters establish a *prima facie* case that the three-year limitation period has expired, the United States has the burden of going forward to show that the Leadbetters' 1999 tax return omitted "an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return," within the meaning of § 6501(e)(1)(A). *Hoffman*, 119 T.C. at 146. Once the United States makes this showing, the burden of going forward with the evidence shifts back to the Leadbetters, who must establish that their 1999 return disclosed their artificial basis-inflation scheme "in the return, or in a statement attached to the return, in a manner adequate to apprise the Secretary of the nature and amount of such item." § 6501(e)(1)(A)(ii); *Hoffman*, 119 T.C. at

146.[29] "Notwithstanding the shifting of the burden of going forward, the burden of ultimate persuasion never shifts from the party who pleads the bar of the period of limitations," namely, the Leadbetters. *Id*. at 146-47; *see also Grapevine Imports, Ltd. v. United States*, 71 Fed.Cl. 324, 343 & n.30 (2006); *In re G-I Holdings Inc*., 2006 WL 2595264, *4 (D.N.J. 2006); *Adler v. Commissioner*, 85 T.C. 535, 540 (1985). The Leadbetters cannot meet this burden.

1. *For Purposes of the Parties' Cross-Motions for Summary Judgment on Whether § 6501(e)(1)(A) Applies, Deborah and Dan Leadbetter Are the Only Taxpayers Properly Before the Court at this Time*.

At the outset, in determining whether the six-year period under § 6501(e)(1)(A) applies, the Court should inquire who the "taxpayer" is. The Leadbetters' brief is unclear, sometimes referring to only Deborah and Dan Leadbetter, who filed a joint return for the 1999 tax year as husband and wife and, thus, are jointly liable for any tax due.[30] But the Leadbetters at other times refer to a larger group of individuals alleged to be partners in the Partnership, termed the "Relevant Taxpayers," that includes not only Deborah and Dan Leadbetter, but also Joel Leadbetter, Kirk Leadbetter, Jill Connolly, and John "Sam" Connolly (who apparently are kin to Deborah and Dan Leadbetter, though the particulars are unclear). (Pl. Memo 5.)

For purposes of the parties' cross-motions for summary judgment, Deborah and Dan

---

[29] Making the Leadbetters bear the burden of defending their own tax return is supported by "several compelling rationales: the vital interest of the government in acquiring its lifeblood, revenue . . . ; the taxpayer's readier access to the relevant information . . . ; and the importance of encouraging voluntary compliance by giving taxpayers incentives to self-report and to keep adequate records in case of dispute. . . . These are powerful justifications not to be disregarded lightly." *Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 21 (2000). Unlike the Leadbetters, the United States was not a party to the disputed transaction, and did not choose how to report (or omit) the transaction on the Leadbetters' 1999 tax return.

[30] *See* 26 U.S.C. § 6013(d)(3).

Leadbetter are the only taxpayers properly before the Court. Deborah Leadbetter, the tax matters partner ("TMP") of the Partnership, is the plaintiff in this action.[31] She may raise the affirmative defense that the limitation period on assessment under § 6501 has expired as to her 1999 tax year. 26 U.S.C. § 6226(d)(1); *Rhone-Poulenc Surfactants and Specialties, L.P. v. Commissioner*, 114 T.C. 533, 535 (2000). The Court's determination regarding the statute of limitations applicable to Deborah Leadbetter of necessity involves Dan Leadbetter as well, as he filed a joint 1999 tax return with Deborah Leadbetter, is jointly liable for any tax due, and is jointly subject to the applicable statute of limitations, whether six years under § 6501(e)(1)(A) or three years under § 6501(a).

In contrast, Joel Leadbetter, Kirk Leadbetter, Jill Connolly, and John "Sam" Connolly (the "Other Partners") have not appeared in this action, through counsel or otherwise, to assert their statute of limitations defenses, if any, to the adjustments set forth in the FPAA.[32] The

---

[31] Complaint ¶ 2 (identifying Deborah Leadbetter as plaintiff). Section 6226 authorizes only a partner, not a partnership, to file a petition seeking a readjustment of partnership items. 26 U.S.C. §§ 6226(a) (TMP), 6226(b) (partner other than TMP). The Partnership is neither the petitioner nor a party under § 6226. *Chef's Choice Produce Ltd. v. Commissioner*, 95 T.C. 388, 394-95 (1990); *Barbados #6 Ltd. v. Commissioner*, 85 T.C. 900, 905, n.1 (1985).

[32] In pertinent part, section 6226 provides:

> (c) Partners treated as parties.– If an action is brought under subsection (a) or (b) with respect to a partnership for any partnership taxable year –
>
> (1) each person who was a partner in such partnership at any time during such year shall be treated as a party to such action, and
>
> (2) the court having jurisdiction of such action shall allow each such person ***to participate in the action***.
>
> (d) Partner must have interest in outcome.–

(continued...)

limitation period under § 6501 applicable to Deborah and Dan Leadbetter applies to them alone, not the Other Partners. Before the Court can hear their statute of limitations defenses, the Other Partners first must "participate in [this] action," as § 6226(d)(1) requires. Therefore, any statute of limitations defenses that Joel Leadbetter, Kirk Leadbetter, Jill Connolly, and/or John "Sam" Connolly might raise are not properly before the Court at this time.

With this in mind, the United States confines the discussion herein to the statute of limitations defense raised by Deborah and Dan Leadbetter.[33]

---

[32](...continued)

(1) In order to be party to action.– Subsection (c) shall not apply to a partner after the day on which–

> (A) the partnership items of such partner for the partnership taxable year became nonpartnership items by reason of 1 or more of the events described in subsection (b) of section 6231, or
>
> (B) the period within which any tax attributable to such partnership items may be assessed against that partner expired.

Notwithstanding subparagraph (B), any person treated under subsection (c) as a party to an action shall be permitted ***to participate in such action*** (or file a readjustment petition under subsection (b) or paragraph (2) of this subsection) ***solely for the purpose of asserting that the period of limitations for assessing any tax attributable to partnership items has expired with respect to such person***, and the court having jurisdiction of such action shall have jurisdiction to consider such assertion.

26 U.S.C. §§ 6226(c), 6226(d)(1) (emphasis added).

[33] To be clear, we do not object to the Other Partners participating in this action as permitted by law. But they must appear in order to participate in this action. The Other Partners cannot litigate their personal statute of limitations defenses, if any, via proxy through Deborah Leadbetter and her counsel. Should any of the Other Partners appear in order to raise a statute of limitations defense, the United States reserves the right to respond at that time.

2. *For Purposes of Applying § 6501(e)(1)(A) to the Leadbetters, Their 1999 Form 1040 Is the Only "Return" at Issue*.

The word "return" permeates § 6501(e)(1)(A). *See* 26 U.S.C. §§ 6501(e)(1)(A) (referring to the "amount of gross income stated in the return"), 6501(e)(1)(A)(i) (referring to "amounts [that] are required to be shown on the return"), 6501(e)(1)(A)(ii) (referring to "gross income stated in the return" and "amount[s] . . . disclosed in the return, or in a statement attached to the return"). Thus, to determine whether the six-year period under § 6501(e)(1)(A) applies to the Leadbetters, the Court must inquire what the "return" is.

Answering this question, section 6501(a) provides:

> ***For purposes of this chapter***, the term 'return' means the return required to be filed by the taxpayer (and does not include a return of any person from whom the taxpayer has received an item of income, gain, loss, deduction, or credit).

26 U.S.C. § 6501(a) (emphasis added).[34] Here, the Leadbetters are the taxpayers, and the return required to be filed is their 1999 Form 1040. Although the Partnership's return (Form 1065) relates to the Leadbetters' Form 1040, section 6501(a) expressly directs that the Partnership's Form 1065 is not a "return" in which gross income is "stated," "shown," or "disclosed" for purposes of § 6501(e)(1)(A).

Section 6501(a) refers to "the return required to be filed by the taxpayer." The Partnership is not a "taxpayer" because partnerships are not subject to income tax.[35] Moreover, section 6501(a) excludes "a return of any person from whom the taxpayer has received an item

---

[34] Chapter 66 of the Code includes section 6501 through 6533.

[35] 26 U.S.C. § 701; *see also* 26 U.S.C. § 7701(a)(13) ("The term 'taxpayer' means any person subject to any internal revenue tax.").

of income, gain, loss, deduction, or credit." The Partnership is a "person" under the Code.[36] As partners in the Partnership, the Leadbetters receive items of income, gain, loss, deduction or credit from the Partnership, pursuant to 26 U.S.C. § 702(a). Section 6501(a) thus excludes the Partnership's Form 1065 from consideration as a "return" for purposes of § 6501(e)(1)(A). As a result, the gross income stated, shown, or disclosed in the return under § 6501(e)(1)(A) is found solely on the Leadbetters' Form 1040.

3. *The Leadbetters' 1999 Form 1040 Omits an Amount of Gross Income Exceeding 25 Percent of the Income Stated in the Return.*

Section 6501(e)(1)(A) can be stated as a simple fraction.

$$\frac{\text{Amount of Omitted Gross Income}}{\text{Gross Income Stated in the Return}}$$

If the fraction exceeds 25 percent, the six-year limitation period under § 6501(e)(1)(A) applies. Here, as explained below, the fraction is approximately **363 percent**.

The general rule is that gross income for purposes of § 6501(e)(1)(A) equals gross income as defined by 26 U.S.C. § 61. *Northern Ind. Pub. Serv. Co. v. Commissioner*, 101 T.C. 294, 299 n.7 (1993); *Schneider v. Commissioner*, T.C. Memo. 1985-139, 1985 WL 14754, 49 T.C.M. (CCH) 1032, 1034 (1985). Applying this rule, the following entries on the Leadbetters' 1999 Form 1040 supply the "gross income stated in the return" under § 6501(e)(1)(A).[37]

---

[36] 26 U.S.C. § 7701(a)(1) ("The term 'person' shall be construed to mean and include an individual, a trust, estate, ***partnership***, association, company or corporation.") (emphasis added).

[37] *See* Leadbetter Ex. D (1999 Form 1040). Schedule D, Capital Gains and Losses, reflects a $34,278 capital loss. Section 61's general definition of gross income excludes loss amounts. *See Schneider*, 49 T.C.M. (CCH) at 1034 ("Nowhere in the definition of gross income under section 61 is there authority to indicate that capital losses or the gross proceeds in a capital loss situation are to be included in the computation of gross income.").

| Item | Form 1040 Line | Amount |
|---|---|---|
| Wages and salaries | 7 | $ 9,688 |
| Taxable interest | 8a | 50,655 |
| Ordinary dividends | 9 | 32,121 |
| Gross trade or business receipts | Schedule C, line 1 | 3,209 |
| Taxable Social Security benefits | 20b | 12,402 |
| Gain from Ranch sale | Sch. D, line 11 and Form 4797 | 971,248 |
| Gross rents and royalties | Sch. E, lines 3-4 | 415 |
| Income from partnerships and S corporations | Sch. E, line 31 | 6,610 |
| Total gross income stated in the return under § 6501(e)(1)(A) | | $1,086,348 |

Turning to the numerator of the § 6501(e)(1)(A) fraction, it is stipulated for summary judgment purposes that the adjusted basis of the Ranch at the time of its sale on July 15, 1999, reported as $5,465,378 by the Partnership, must be reduced by $5,012,861 in the event the Court sustains the United States' position in this matter. The basis reduction, in turn, increases the Partnership's gain on the sale of the Ranch by $5,012,861, from the $1,234,622 reported by the Partnership to $6,247,483.

On their 1999 Form 1040, the Leadbetters reported $971,248 as their share of the $1,234,622 gain reported by the Partnership, or approximately 78.667723 percent of the reported gain.[38] Applying this percentage, the Leadbetters' share of the $6,247,483 corrected gain is $4,914,753. The gross income omitted from the Leadbetters' 1999 Form 1040 is $3,943,504 ($4,914,753 corrected gain minus $971,248 reported gain). Thus, the § 6501(e)(1)(A) fraction is computed as follows.

[38] Appendix 1 hereto sets forth in detail the calculation of the Leadbetters' total direct and indirect percentage interest in the Partnership, and their share of the omitted gain.

| Amount of Omitted Gross Income | = | $3,943,504 | = | 363 percent |
|---|---|---|---|---|
| Gross Income Stated in the Return | | $1,086,348 | | |

Because the omission-of-income fraction exceeds 25 percent, the United States is entitled to the six-year limitation period under § 6501(e)(1)(A), unless the Leadbetters can show their 1999 Form 1040 adequately disclosed the transaction that gave rise to the $3,943,504 unreported gain. As we demonstrate below, the Leadbetters failed to adequately disclose the transaction.

4. *The Leadbetters' 1999 Form 1040 Fails to Adequately Disclose the Nature and Amount of the Omitted Item.*

Section 6501(e)(1)(A)(ii) provides:

> In determining the amount omitted from gross income, there shall not be taken into account any amount which is omitted from gross income stated in the return if such amount is disclosed in the return, or in a statement attached to the return, in a manner adequate to apprise the Secretary of the nature and amount of such item.

26 U.S.C. § 6501(e)(1)(A)(ii). Thus, had the Leadbetters adequately disclosed the nature and amount of their $3,943,504 unreported gain, the numerator of the omission-of-income fraction under § 6501(e)(1)(A) would exclude this omitted item.

The Leadbetters argue that their $3,943,504 unreported gain was adequately disclosed because the 12/31/99 Partnership Return (Form 1065) disclosed the $6,700,000 of gross proceeds from the sale of the Ranch. (Pl. Memo 13.) They are wrong.

In the first place, the Leadbetters do not even mention, let alone come to grips with, the definition of a "return" prescribed by § 6501(a). As noted, section 6501(a) instructs that "the term 'return' means the return required to be filed by the taxpayer (and does not include a return of any person from whom the taxpayer has received an item of income, gain, loss, deduction, or credit)." Accordingly, the only return that matters under § 6501(e)(1)(A)(ii) is the ***taxpayer's***

return – the Leadbetters' 1999 Form 1040 – not the Form 1065 filed by the Partnership.

Having clarified the focus of the adequate disclosure inquiry, we turn to the matters disclosed on the Leadbetters' 1999 Form 1040. Nothing in the Form 1040 even remotely hints that the Leadbetters failed to report $3,943,504 of the gain they should have reported due to the sale of the Ranch.

Only two entries in the Leadbetters' 1999 Form 1040 relate in any way to their underreported gain from the sale of the Ranch. Specifically, on Line 11 of Schedule D, Capital Gains and Losses, the Leadbetters reported a $971,248 "gain from Form 4797." (Leadbetter Decl. Ex. D at Sch. D, Line 11.) No other description accompanies this item. The same $971,248 gain appears on Form 4797, Sales of Business Property, but is cryptically described only as "FROM K-1." (*Id*. at Form 4797.) Nothing about either entry suggests to the reader that the amount of the reported gain is understated by $3,943,504. And nothing the reader can see implies the nature of the $3,943,504 understatement, rooted in the following events.

- Valley Garden's short sale of U.S. Treasury Notes on July 10, 1998.
- Valley Garden's transfer of the short position and the cash short sale proceeds to the Partnership on July 13, 1998.
- The Partnership's closing of the short sale on July 16, 1998.
- Valley Garden's transfer of the Ranch to the Partnership, effective December 31, 1998.
- Valley Garden's transfer of a 98.47992 percent interest in the Partnership to Win-Del on June 30, 1999.
- The Partnership's sale of the Ranch, with an alleged (but vastly inflated) basis of $5,465,378, for $6,700,000 on July 15, 1999.

Section 6501(e)(1)(A)(ii) requires the taxpayer to adequately disclose "the nature and amount" of an omitted item of gross income. The Leadbetters' 1999 Form 1040 discloses neither the amount of their unreported $3,943,504 gain, nor the nature of the artificial basis-inflation scheme that caused the understatement of the gain. As a result, the adequate disclosure requirement is not met. But the Leadbetters, to the contrary, nonetheless urge:

> [A]n omission from gross income does not arise by reason of a difference between the taxpayer and the Commissioner as to the legal construction to be applied to a disclosed transaction. . . . [W]here the tax law allows for multiple views of certain transactions, a taxpayer is not obligated to report his transactions according to the government's view of the transactions. To so require would eliminate any ability to take a position (warranted by the applicable legal authorities) contrary to the government's position. . . . [N]o omission can result from the full and complete information, based on the taxpayers' view of the transactions, reported on these tax returns.

(Pl. Memo 14-15 (internal quotation and alterations in original omitted).) As support for this argument, the Leadbetters rely on *Davis v. Hightower*, 230 F.2d 549 (5th Cir. 1956), and *Walker v. Commissioner*, 46 T.C. 630 (1966). Both decisions are inapposite. As the Tax Court purported to follow *Hightower* in *Walker*, 46 T.C. at 640, we focus below on *Hightower*.

Hightower was in the business of buying and selling cotton. *Hightower*, 230 F.2d at 550-51. On his 1946 and 1947 tax returns, Hightower "fully and accurately stated" all the material facts of his transactions, *id*. at 554, describing them as sales of cotton and identifying the date, the sale price, his cost of acquiring the cotton, and the net gain. *Id*. at 553. Hightower's returns characterized his gains from selling cotton as capital gains. Under the law then in effect, only 50 percent of a capital gain was subject to tax. *Id*. at 551 & n.1.

Upon examining the returns, the Commissioner asserted that Hightower recognized ordinary income from his cotton sales and assessed the additional tax. The assessments were

made more than three years after Hightower filed his returns, but less than five years after the returns were filed. Hightower paid the tax, filed a suit for refund, and argued that the assessments were time-barred because they were not made within the three-year statute of limitations under § 275(a) of the Internal Revenue Code of 1939. In response, the Commissioner argued that the assessments were timely because Hightower omitted gross income exceeding 25 percent of the income stated in his returns and, therefore, the five-year statute of limitations under former § 275(c) applied. *Id*. at 550-52.[39]

The Fifth Circuit disagreed. Holding that the five-year limitation period was inapplicable, the court stated:

> The only way in which the taxpayer here could satisfy the government's requirement that he state his "gross income" in a way to permit a tax computation of the amount the government claims is due, would be for him to abandon his claim that he was entitled to capital gains treatment of the sales in question. No such penalty was intended by Congress in extending the statutory period to five years in case of substantial omission. It cannot be thought that if a taxpayer accurately fills in every blank space provided for his use in the income tax form, giving every "gross" or maximum figure called for, and arrives at an incorrect computation of the tax only by reason of a difference between him and the Commissioner as to the legal construction to be applied to a disclosed transaction, the use of a smaller figure than that ultimately found to be correct in one stage of the computation amounts to an omission from "gross income" of the difference between the correct and incorrect item.

*Hightower*, 230 F.2d at 553. For several reasons, the Leadbetters err in relying on *Hightower*.

---

[39] Section 275(c), a predecessor of present-day § 6501(e)(1)(A), provided:

> If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 5 years after the return was filed.

26 U.S.C. § 275(c) (1947), *reproduced in Hightower*, 230 F.2d at 551 n.3.

***First***, *Hightower* did not address the adequate disclosure rule of § 6501(e)(1)(A)(ii), currently set forth in the 1986 Code and formerly the 1954 Code; rather, section 275(c) of the 1939 Code, which contained ***no*** adequate disclosure language, was at issue. Case law predating the 1954 Code, including *Hightower*, is simply inapposite to the adequate disclosure inquiry under current law. *See CC&F Western Operations Ltd. P'ship v. Commissioner*, 273 F.3d 402, 407 (1st Cir. 2001).

***Second***, *Hightower* was not even a disclosure case. Hightower's tax returns "fully and accurately stated" all of the material transactional facts relating to his cotton sales. *Hightower*, 230 F.2d at 554. As a consequence, the issue was not whether Hightower had failed to disclose the nature and amount of his income from cotton sales. He plainly did. Here, in contrast, the Leadbetters cannot plausibly claim that their 1999 Form 1040 fully and accurately discloses the material facts of their artificial basis-inflation scheme.

***Third***, the Leadbetters misconstrue the Fifth Circuit's stated concern about forcing Hightower to "abandon his claim that he was entitled to capital gains treatment." *Hightower*, 230 F.2d at 553. Adequate disclosure under § 6501(e)(1)(A)(ii) does not "require" the Leadbetters to report their artificial basis-inflation scheme "according to the government's view of the transactions," nor does it "eliminate any ability to take a position . . . contrary to the government's position." (Pl. Memo 14.) The Leadbetters are free to choose what to report on their return. But they cannot omit material facts from their return, then seek refuge behind the three-year statute of limitations. To avoid the six-year limitation period under § 6501(e)(1)(A), the Leadbetters must adequately disclose the nature and amount of their omitted gross income on their return. Section 6501(e)(1)(A)(ii) does not force the Leadbetters to "abandon" any legal

position and "adopt" another. Quite the contrary, the Leadbetters need only ***disclose*** the material transactional facts on their tax return.[40]

***Fourth***, even assuming *Hightower* were an adequate disclosure case (and it is ***not***), more recent and persuasive authority instructs there is no adequate disclosure here. The Leadbetters insist that their own characterization of their artificial basis-inflation scheme establishes what adequate disclosure is.[41] Again, the Leadbetters are wrong. Substantive tax law, ***not*** the Leadbetters' subjective view, establishes the transaction's character for purposes of the adequate disclosure inquiry under § 6501(e)(1)(A)(ii).

*Cardinal Life Ins. Co. v. United States*, 425 F.2d 1328 (5th Cir. 1970), is more akin to the present case than the Fifth Circuit's earlier *Hightower* decision, and illustrates why the Leadbetters are wrong. In *Cardinal Life*, the taxpayer erroneously filed returns as if it were a life insurance company, rather than an ordinary corporation, and omitted capital gain income

---

[40] For similar reasons, *Walker* lends the Leadbetters' position no support. The Tax Court found that the return filed by a partnership, in which Walker was a partner, adequately disclosed the material terms of the installment sale at issue (just as Hightower's return adequately disclosed his cotton sales). *Walker*, 46 T.C. at 639. It is true that *Walker* addressed the adequate disclosure standard under § 6501(e)(1)(A)(ii), unlike *Hightower*, which addressed § 275(c) of the 1939 Code. But the last sentence of § 6501(a) now provides that "the term 'return' means the return required to be filed by the taxpayer (and does not include a return of any person from whom the taxpayer has received an item of income, gain, loss, deduction, or credit)." Congress added this sentence to § 6501(a) in the Taxpayer Relief Act of 1997, Pub. L. No. 105-34, § 1284(a), 111 Stat. 788, 1038 (1997). This amendment is effective for tax years beginning after August 5, 1997. Pub. L. No. 105-34, § 1284(b), 111 Stat. 1038 (1997). Thus amended, § 6501(a) applies to the Leadbetters' 1999 tax year. Because the Tax Court in *Walker* rested its decision on disclosures in the partnership's return, rather than limiting its analysis to disclosures in the return filed by the taxpayer/partner – contrary to what § 6501(a) now requires – *Walker* has no precedential vitality for post-1997 tax years, including the present case.

[41] *See* Pl. Memo 15 ("[N]o omission can result from the full and complete information, based on the taxpayers' view of the transactions, reported on these tax returns.").

exceeding 25% of the gross income shown on the returns. The taxpayer "assumed that it did not have to attach separate statements showing capital gains transactions as in the case of ordinary corporations, since it was reporting as an insurance company, albeit erroneously," and argued that § 6501(e)(1)(A)(ii) was inapplicable because "the only error in its returns was in reporting as a life insurance company." *Cardinal Life*, 425 F.2d at 1330. Rejecting this "circular reasoning," the Fifth Circuit stated:

> Taxpayer would distinguish *Taylor* [417 F.2d 991 (5th Cir. 1969)] and *Phinney* [392 F.2d 680 (5th Cir. 1968)], because in each of those cases there was an omission of an amount required to be reported on the form that was properly utilized, while here the taxpayer's reporting requirement were fixed by ***what it envisioned itself to be rather than by what it actually was***. In the context of 6501(e) we think this argument is specious.

*Cardinal Life*, 425 F.2d at 1330 (emphasis added). *Cardinal Life* refutes the Leadbetters' claim that their subjective view of the transaction establishes the level of return disclosure that is adequate under § 6501(e)(1)(A)(ii).

The Leadbetters' argument is no less circular, nor any less specious, than the argument the Fifth Circuit rejected in *Cardinal Life*. When they filed their 1999 Form 1040, the Leadbetters may have envisioned themselves as sellers of a ranch having a basis of $5,465,378, rather than a minuscule basis they had artificially inflated by over $5 million. As a matter of law, even if the Court accepts the Leadbetters' representation concerning their subjective understanding of the transaction, that does not render the Leadbetters' alleged "disclosure" of the transaction on their 1999 Form 1040 adequate under § 6501(e)(1)(A)(ii).

By executing an artificial basis-inflation scheme, the Leadbetters attempted to reduce their taxable gain from the sale of the Ranch by over $5 million. None of the steps essential to this basis-inflation scheme appear on the Leadbetter's 1999 Form 1040. A tax return cannot

meet the adequate disclosure requirement under § 6501(e)(1)(A)(ii) by disclosing the transaction's mere form as conceived and viewed by the taxpayer. Under *Gregory v. Helvering*, 293 U.S. 465 (1935), the "basic rule of law is that taxation is based upon substance, not form." *Lerman v. Commissioner*, 939 F.2d 44, 54 (3d Cir. 1991); *see also Coltec Industries, Inc. v. United States*, 454 F.3d 1340, 1353-54 (Fed. Cir. 2006) (same); *Commissioner v. Danielson*, 378 F.2d 771, 774-75 (3d Cir. 1967) ("Where the Commissioner attacks the formal agreement the Court involved is required to examine the 'substance' and not merely the 'form' of the transaction. This is so for the very good reason that the legitimate operation of the tax laws is not to be frustrated by forced adherence to the mere form in which the parties may choose to reflect their transaction.").[42] Thus, to meet their burden of proving that their 1999 Form 1040 adequately discloses the transaction under § 6501(e)(1)(A)(ii), the Leadbetters must show that their return adequately discloses the transaction "in substance." *CC& F*, 273 F.3d at 407; *G-I Holdings*, 2006 WL 2595264 at *5-6.[43]

The Leadbetters cannot meet this burden by simply proclaiming that their own characterization of the transaction controls the adequate disclosure inquiry. Their subjective views, "even if credited, . . . are insufficient to establish economic substance." *Coltec*, 454 F.3d

---

[42] The FPAA issued by the IRS to the Partnership asserts several substance-over-form grounds for invalidating the Leadbetters' artificial basis-inflation scheme. (Complaint Ex. A.)

[43] As noted, the Leadbetters have the burden of proving adequate disclosure. *Hoffman*, 119 T.C. at 146-47; *Grapevine Imports*, 71 Fed.Cl. at 343 & n.30; *G-I Holdings*, 2006 WL 2595264 at *4; *Adler*, 85 T.C. at 540. They likewise have the burden of establishing the true economic substance, if any, of their transaction. *Coltec*, 454 F.3d at 1355-56; *In re CM Holdings, Inc.*, 301 F.3d 96, 102 (3d Cir. 2002) ( "[t]he taxpayer has the burden of showing that the form of the transaction accurately reflects its substance").

at 1359.[44] If sustained, the Leadbetters' position would immunize all substance-over-form controversies from the six-year statute of limitations under § 6501(e). With that in mind, the Court should reject the Leadbetters' position.

***Fifth***, and finally, unlike the present case, *Hightower* was not a substance-over-form controversy. The substance and form of Hightower's transactions – sales of cotton – were exactly the same. Hightower's returns omitted no material facts that could raise a dispute over the economic substance of his cotton sales.

The same cannot be said of the Leadbetters' 1999 Form 1040. It is not enough that the Leadbetters' return reported a $971,248 gain from the sale of an unidentified property (belatedly disclosed by their summary judgment motion as the Ranch). What is missing is any reference to the prior events that allegedly inflated the basis of the Ranch by over $5 million.[45]

In cases holding that a taxpayer fails to meet the adequate disclosure requirement under

---

[44] *See also Black & Decker Corp. v. United States*, 436 F.3d 431, 443 (4th Cir. 2006) ("a taxpayer's mere assertion . . . cannot by itself establish that the transaction was not a sham") (internal quotation omitted); *TIFD III-E, Inc. v. United States*, 459 F.3d 220, 236, 239 (2d Cir. 2006) (dismissing "taxpayer's highly self-interested characterization" of transaction as mere "window dressing"); *Neonatology Assocs., P.A. v. Commissioner*, 115 T.C. 43, 87 (2000) (to same effect), *aff'd*, 299 F.3d 221 (3d Cir. 2002); *Long Term Capital Holdings v. United States*, 330 F. Supp.2d 122, 179-80 (D. Conn. 2004) (to same effect), *aff'd by unpublished opinion*, 2005 WL 2365336 (2d Cir. 2005).

[45] As the Federal Circuit has instructed, in evaluating whether the taxpayer's arrangements have economic substance, "the transaction to be analyzed is the one that gave rise to the alleged tax benefit." *Coltec*, 454 F.3d at 1356; *see also Black & Decker*, 436 F.3d at 441 (economic substance analysis focuses on "the specific transaction whose tax consequences are in dispute"); *TIFD III-E*, 459 F.3d at 232 ("The IRS's challenge to the taxpayer's characterization is not foreclosed merely because the taxpayer can point to the existence of some business purpose or objective reality in addition to its tax-avoidance objective."); *Nicole Rose Corp. v. Commissioner*, 320 F.3d 282, 284 (2d Cir. 2003) ("[t]he relevant inquiry is whether the transaction that generated the claimed deductions . . . had economic substance"); *ACM P'ship v. Commissioner*, 157 F.3d 231, 260 & n. 57 (3d Cir. 1998).

§ 6501(e)(1)(A)(ii), courts always find that the tax return in question omits one or more material transactional facts. *CC&F*, 273 F.3d at 406-08 (no reference in return to bank debt discharged in sale of property); *G-I Holdings*, 2006 WL 2595264 at *7-8 (no reference to bank loan that financed transaction); *Estate of Whitlock v. Commissioner*, 59 T.C. 490, 492-94, 510-11 (1972) (no reference to notes, accounts receivable, and stock giving rise to unreported income); *Estate of Frane v. Commissioner*, 98 T.C. 341, 345 (1992) (no reference to multiple facts regarding sale of property), *aff'd in part and rev'd in part on unrelated grounds*, 998 F.2d 567 (8th Cir. 1993); *Estate of Fry v. Commissioner*, 88 T.C. 1020, 1022-23 (1987) (same); *Phinney v. Chambers*, 392 F.2d 680, 681-86 (5th Cir. 1968) (same); *Insulglass Corp. v. Commissioner*, 84 T.C. 203, 205-08 (1985) (no reference to nature and amount of unreported income); *Miller v. Commissioner*, T.C. Memo. 1992-612, 1992 WL 279823 (1992) (no reference to loans giving rise to unreported income). These authorities instruct that the Leadbetters' 1999 Form 1040 fails to adequately disclose their artificial basis-inflation scheme.

No genuine issue of material fact prevents the Court from reaching this conclusion as a matter of law. The contents of the Leadbetters' 1999 Form 1040 are undisputed and speak for themselves. For summary judgment purposes, it is undisputed and/or stipulated **(i)** that Valley Garden entered into a short sale of U.S. Treasury Notes with a total face amount of $5,000,000, receiving cash proceeds of $5,256,338, on July 10, 1998; **(ii)** that Valley Garden transferred the short position and the $5,256,338 of cash proceeds to the Partnership on July 13, 1998; **(iii)** that the Partnership closed the short sale at a cost of $5,012,861 on July 16, 1998; and **(iv)** that the

Partnership's obligation to close the short sale was a liability for purposes of § 752(b).[46] These material facts appear nowhere in the Leadbetters' 1999 Form 1040.

To sum up, the economic substance of the Leadbetters' artificial basis-inflation scheme hinges on the undisclosed short sale. Their failure to disclose the liability incurred by the Partnership in connection with the short sale is fatal. *See, e.g.*, *CC&F*, 273 F.3d at 406-08 (no adequate disclosure where return failed to disclose bank debt discharged in sale of property); *G-I Holdings*, 2006 WL 2595264 at *7-8 (same where bank loan that financed transaction not disclosed); *Miller*, T.C. Memo. 1992-612, 1992 WL 279823 (same where loans giving rise to unreported income not disclosed). Therefore, the Court should hold that the Leadbetters have not met the adequate disclosure requirement under § 6501(e)(1)(A)(ii).

5. *The Six-Year Period Under § 6501(e)(1)(A) Remains Open Because the Issuance of the FPAA Suspended the Running of that Period.*

As shown above, the 25 percent income-omission test under § 6501(e)(1)(A) is met, and the adequate disclosure exception under § 6501(e)(1)(A)(ii) does not apply. Consequently, the six-year statute of limitations on assessment applies to the Leadbetters' 1999 tax year. Because the six-year limitation period under § 6501(e) remains open, the United States may assess additional tax against the Leadbetters for the 1999 tax year.

To explain, the six-year limitation period began on April 15, 2000, when the Leadbetters filed their 1999 Form 1040. 26 U.S.C. §§ 6501(a), 6501(e). On April 6, 2006, ***before*** the six-

---

[46] As explained above, the United States contends that recharacterizing the Partnership's obligation to close the short sale as a liability under § 752(b) requires that the adjusted basis of the Ranch be reduced by $5,012,861. The parties have stipulated for summary judgment purposes that this basis reduction is required in the event the Court sustains the United States' position in this matter.

year period had run, the IRS issued the FPAA. The FPAA suspends the running of the six-year limitation period until the Court renders its final judgment in this proceeding, plus one year thereafter. 26 U.S.C. § 6229(d); *see AD Global Fund, LLC v. United States*, 67 Fed.Cl. 657, 694 (2005), *aff'd*, __ F.3d __, 2007 WL 624366 (Fed. Cir. March 2, 2007); *Grapevine Imports, Ltd. v. United States*, 71 Fed.Cl. 324, 340 (2006); *Rhone-Poulenc Surfactants and Specialties, L.P. v. Commissioner*, 114 T.C. 533, 551-57 (2000).

The statute of limitations on assessments against the Leadbetters for their 1999 tax year was suspended by the FPAA and thus remains open. Accordingly, the Court should grant the United States' cross-motion for partial summary judgment, and deny the Leadbetters' motion for summary judgment, regarding the statute of limitations issue.

The Leadbetters' remaining arguments lack merit and do not alter this conclusion. For the sake of completeness, we address these arguments below.

6. *Even If the Court Takes the 12/31/99 Partnership Return into Consideration, There Still Is an Omission of Gross Income Exceeding 25 Percent of the Income Stated in the Return.*

The Leadbetters contend there was no omission of gross income because the 12/31/99 Partnership Return reported the $6,700,000 gross sale price of the Ranch. For purposes of computing the 25 percent omission-of-income test under § 6501(e)(1)(A), the Leadbetters argue, it does not matter whether the net gain from selling the Ranch was the $1,234,622 reported by the Partnership – reflecting an alleged basis in the Ranch inflated by over $5 million – or the $6,247,483 net gain the Partnership should have reported. In so contending, the Leadbetters rely on the "trade or business" rule of § 6501(e)(1)(A)(i). (Pl. Memo 11-12.)

> In the case of a trade or business, the term "gross income" means the total of the amounts received or accrued from the sale of goods or services (if such amounts are required to be shown on the return) prior to diminution by the cost of such sales or services.

26 U.S.C. § 6501(e)(1)(A)(i).

As noted, the general rule is that gross income for purposes of § 6501(e)(1)(A) equals gross income as defined by 26 U.S.C. § 61. *Schneider*, 49 T.C.M. (CCH) at 1034. Section 61 provides that gross income includes "[g]ains derived from dealings in property," like the sale of the Ranch. 26 U.S.C. § 61(a)(3). The Treasury regulations under § 61 define gains derived from dealings in property as follows:

> Gain realized on the sale or exchange of property is included in gross income, unless excluded by law. For this purpose property includes tangible items, such as a building, and intangible items, such as goodwill. Generally, the gain is ***the excess of the amount realized over the unrecovered cost or other basis for the property*** sold or exchanged.

26 C.F.R. § 1.61-6(a) (emphasis added). In other words, the general rule is that a taxpayer's gross income from selling property is the net gain – the gross sale price minus the basis of the property – not the gross sale price.

Section 6501(e)(1)(A)(i) carves out a narrow exception for gross income generated by a trade or business involving the sale of goods or services. In such cases, gross income equals the taxpayer's gross receipts from the sale of goods or services, undiminished by the cost of such sales or services. On the assumption that the Partnership's sale of the Ranch qualifies for the trade or business exception under § 6501(e)(1)(A)(i), the Leadbetters assert there is no omission of gross income because the Partnership reported the full $6,700,000 sale price. The Leadbetters are wrong, however.

The 12/31/99 Partnership Return is irrelevant to whether the six-year limitation period

under § 6501(e)(1)(A) applies to the Leadbetters' 1999 tax year. Section 6501(e)(1)(A)(ii) limits the trade or business exception to "amounts received or accrued from the sale of goods or services (if such amounts are required to be shown on ***the return***)." 26 U.S.C. § 6501(e)(1)(A)(i) (emphasis added). Even if the Leadbetters are correct in asserting that the Partnership qualifies for the trade or business exception (and they are ***not***, as we explain below), the 12/31/99 Partnership Return is not the return at issue. For purposes of applying the 25 percent omission-of-income test to the Leadbetters' 1999 tax year, the only return that matters is "the return required to be filed by ***the taxpayer*** (and does ***not*** include a return of any person from whom the taxpayer has received an item of income, gain, loss, deduction, or credit)." 26 U.S.C. § 6501(a) (emphasis added). As mentioned, the Leadbetters are the taxpayers and the Partnership is a legally distinct "person" from whom they received items of income, gain, loss, deduction, or credit pursuant to 26 U.S.C. § 702(a). Consequently, the 25 percent omission-of-income test applies exclusively to gross income stated in the Leadbetters' 1999 Form 1040, and excludes trade or business gross receipts, if any, stated in the 12/31/99 Partnership Return.

Section 6501(a) aside, the Partnership's sale of the Ranch does not qualify for the trade or business exception under § 6501(e)(1)(A)(i) in any event. It is stipulated that the Partnership, at all times relevant to this matter, was engaged in the trade or business of ranching, and was not engaged in the trade or business of buying and selling ranches. (US Fact ¶ 43; Stip. ¶ 1.) This fact is dispositive. Since it was not in the trade or business of buying and selling ranches, the Partnership's sale of the Ranch was not a "sale of goods or services" in the ordinary course of a "trade or business," within the meaning of § 6501(e)(1)(A)(i). *Insulglass Corp. v. Commissioner*, 84 T.C. 203, 208-10 (1985) (section 6501(e)(1)(A)(i) inapplicable to taxpayer's

gains from sales of commodities not arising from conduct of trade or business); *Schneider*, 49 T.C.M. (CCH) at 1034-35 (same as to capital gain from sale of real estate).[47]

The Leadbetters concede that § 6501(e)(1)(A)(i) "would not be applicable to a sale that is not in a trade or business setting," but urge that "the Partnership did sell the Ranch in the context of a trade or business, making that statute applicable." (Pl. Memo 12 n.57.) On that reasoning, the Leadbetters contend the Partnership "sold a ***good*** (*i.e.*, the Ranch land and appurtenant property and rights)." (Pl. Memo 12; emphasis added.) This contention has no merit.

The Leadbetters' basic dilemma is that § 6501(e)(1)(A)(i) does not refer to sales of property that occur in a trade or business "setting," nor to sales of property that occur in the "context" of a trade or business. Section 6501(e)(1)(A)(i) unequivocally refers to a "trade or business" involving the "sale of goods or services." Whether the statute applies to the sale of the Ranch hinges on whether the Ranch was a "good."[48] It clearly was not.

Courts construe the words that Congress employs in the Internal Revenue Code according to "their ordinary, everyday senses." *Crane v. Commissioner*, 331 U.S. 1, 6 (1947).[49] In its ordinary, everyday sense, the term "goods" means inventory, stock in trade, merchandise, or other property held by the taxpayer primarily for sale to customers in the ordinary course of

---

[47] *Compare Connelly v. Commissioner*, T.C. Memo. 1982-644, 1982 WL 10937 (1982) (finding that taxpayer was engaged in trade or business of buying and selling securities, not mere investor engaging in occasional sales, for purposes of § 6501(e)(1)(A)(i)).

[48] The Court may take it as given that selling a ranch is not a sale of "services."

[49] *See also Commissioner v. Soliman*, 506 U.S. 168, 174 (1993); *Malat v. Riddell*, 383 U.S. 569, 571 (1966); *Commissioner v. Korell*, 339 U.S. 619, 627-28 (1950); *Old Colony R. Co. v. Commissioner*, 284 U.S. 552, 560 (1932); *Lynch v. Alworth-Stephens Co.*, 267 U.S. 364, 370 (1925) ("[T]he plain, obvious and rational meaning of a statute is always to be preferred to any curious, narrow, hidden sense that nothing but the exigency of a hard case and the ingenuity and study of an acute and powerful intellect would discover.").

business. *See Cenex, Inc. v. United States*, 156 F.3d 1377, 1379 n.1 (Fed. Cir. 1998); 26 C.F.R. § 1.471-1 (defining inventory to include "all finished or partly finished goods" or "merchandise intended for sale").

The Ranch does not fit the ordinary, everyday definition of a "good." Indeed, the Leadbetters concede this very point in the 12/31/99 Partnership Return. To be specific, the 12/31/99 Partnership Return states that the Partnership's principal product or service was "beef cattle ranching & farming."[50] With respect to sales in the ordinary course of its ranching business, the Partnership reported $869,553 of gross sales, cost of goods sold of $478,301, and gross profit of $391,252.[51]

The Partnership did ***not*** report the sale of the Ranch as a sale of goods in the ordinary course of its ranching business, reflected in the figures above. Separately, on line 6 of Schedule K of the 12/31/99 Partnership Return, and line 6 of Form 4797, Sale of Business Property, the Partnership reported the (understated) $1,234,622 gain from the sale of the Ranch as gain from the sale of property used in a trade or business under 26 U.S.C. § 1231.[52] In pertinent part, section 1231(b) defines "property used in a trade or business" as follows:

---

[50] Leadbetter Decl. Ex. A (Form 1065), page 1, Item B.

[51] Form 1065, page 1, lines 1c, 2, 3; *id*. at page 2, Schedule A (cost of goods sold).

[52] Leadbetter Decl. Ex. A, Schedule K, Line 6; *id*. at Form 4797, line 6. Section 1231 allows favorable capital gain treatment for gains from the sale or exchange of certain property used in a trade or business. 26 U.S.C. §§ 1231(a)(1), 1231(a)(3)(A)(i). On their 1999 Form 1040, the Leadbetters likewise reported their share of the Partnership's gain from the sale of the Ranch as § 1231 gain. *See* Leadbetter Decl. Ex. D, Form 1040, line 13; *id*. at Schedule D, Capital Gains and Losses, line 11; *id*. at Form 4797, line 7.

> The term "property used in a trade or business" means property used in the trade or business . . . and real property used in the trade or business, held for more than 1 year, which is ***not*** –
>
> (A) property of a kind which would properly be includible in the ***inventory*** of the taxpayer if on hand at the close of the taxable year, [or]
>
> (B) property held by the taxpayer ***primarily for sale to customers in the ordinary course of his trade or business***.

26 U.S.C. § 1231(b)(1) (emphasis added); *see generally Grant Oil Tool Co. v. United States*, 381 F.2d 389, 397-98 (Ct.Cl. 1967) (examining distinction between § 1231 property and inventory or other property held primarily for sale in ordinary course of business).

By treating the sale of the Ranch as a sale of property used in a trade or business under § 1231 on the 12/31/99 Partnership Return, the Partnership acknowledged that the ranch was neither inventory nor other property held primarily for sale to customers in the ordinary course of the Partnership's trade or business. Having caused the Partnership to report the sale of the Ranch in this manner, the Leadbetters cannot now argue the transaction was a sale of "goods" in the ordinary course of business.[53]

Even more to the point, on the facts that are undisputed and stipulated for summary judgment purposes, the Leadbetters' treatment of the sale of the Ranch as a sale of § 1231 property – as distinguished from a sale of "goods" that meets the trade or business exception under § 6501(e)(1)(A)(i) – is legally correct. In pertinent part, Treas. Reg. § 1.61-3(a) provides:

---

[53] Had the Partnership reported the sale of the Ranch as a sale of inventory or other property held primarily for sale to customers in the ordinary course of business, the gain would not have qualified for favorable capital gains treatment under § 1231.

> In a manufacturing, merchandising, or mining business, "gross income" means the total sales, less the cost of goods sold, plus any income from investments and from incidental or outside operations or sources.

26 C.F.R. § 1.61-3(a). Under this general definition, gross income from sales of goods in the ordinary course of business equals "total sales, less the cost of goods sold."

Upon enacting § 6501(e)(1)(A)(i), Congress redefined gross income from sales of goods in the ordinary course of business to mean gross receipts "from the sale of goods or services . . . prior to diminution by the cost of such sales or services." 26 U.S.C. § 6501(e)(1)(A)(i); *see Schneider*, 49 T.C.M. (CCH) at 1035 (examining legislative history of § 6501(e)(1)(A)(i) and reaching this conclusion). Section 6501(e)(1)(A)(i) does ***not*** modify the definition of gross income from business activities ***other*** than the sale of goods, namely, "income from investments and from incidental or outside operations or sources." 26 C.F.R. § 1.61-3(a).

Gross income from investments, including incidental, occasional, or casual sales of property, fundamentally differs from gross income from the sale of goods. Sales of goods in the ordinary course of business occur with frequency and continuity. *Goodman v. United States*, 390 F.2d 915, 918, 921 (Ct.Cl. 1968) (emphasizing number and frequency of real estate sales in finding that taxpayer engaged in trade or business); *Lewis v. United States*, 389 F.2d 818, 824 (Ct.Cl. 1968) (taxpayer held residential lots "primarily for sale to customers in the regular course of business" due to "frequency of sales"); *Ehrman v. Commissioner*, 120 F.2d 607, 608-10 (9th Cir. 1941) (where taxpayer subdivided ranch and sold lots, frequency and continuity of sales supported finding of trade or business income).

In contrast, the Partnership's sale of the Ranch was a one-time casual sale that liquidated the Leadbetters' investment in the Ranch. *Union Bank v. United States*, 285 F.2d 126, 128-29 (Ct.Cl. 1961) (distinguishing between taxpayer's sale of his business, held capital gain, and sales

of real estate in the ordinary course of business, held ordinary income); *Lazarus v. United States*, 172 F.Supp. 421, 424-27 (Ct.Cl. 1959) (real estate sales insufficiently frequent and continuous to be sales in ordinary course of business); *Goodman*, 390 F.2d at 921 ("The normal course of taxpayers' business is not established by an individual transaction.").[54] As such, the isolated sale of the Ranch was not a "sale of goods" for purposes of § 6501(e)(1)(A)(i). *Insulglass*, 84 T.C. at 208-10; *Schneider*, 49 T.C.M. (CCH) at 1034-35.[55]

What is more, the Leadbetters' claim that this case is "identical" to *Colony, Inc. v. Commissioner*, 357 U.S. 28 (1958), where the Supreme Court found no omission of gross income under § 275(c) of the 1939 Code, is grossly inaccurate. In *Colony*, the taxpayer's

---

[54] *See also Commissioner v. Groetzinger*, 480 U.S. 23, 35 (1987) (holding that "to be engaged in a trade or business, the taxpayer must be involved in the activity with continuity and regularity and that . . . [a] sporadic activity . . . does not qualify"); *Higgins v. Commissioner*, 312 U.S. 212 (1941) (full-time investor held not engaged in trade or business).

[55] The Leadbetters erroneously cite a number of cases that supposedly hold to the contrary, but none is on point. (Pl. Memo 12 & nn.57-58.) *Patterson v. United States*, 198 Ct.Cl. 543 (1972), did not address § 6501(e)(1)(A)(i); rather, the issue was whether the taxpayer operated his farm with an intent to make a profit. Most of the other cited cases involved gross income omissions arising from the "sale of goods or services" in the ordinary course of business under § 6501(e)(1)(A)(i), unlike the Partnership's isolated sale of the Ranch. *See Waller v. Commissioner*, T.C. Memo. 1991-183, 1991 WL 62483 (1991) (sales of timber and construction services); *Shaheen v. Commissioner*, T.C. Memo. 1987-486, 1987 WL 47499 (1987) (scrap metal business conducted for 20 years); *Rodman v. Commissioner*, T.C. Memo. 1973-277, 1973 WL 2454 (1973) (trading business); *Shaw v. Commissioner*, T.C. Memo. 2003-111, 2003 WL 1903446 (2003) (sales of artworks, gifts, souvenirs, and other merchandise); *Stafford v. Commissioner*, T.C. Memo. 1992-637, 1992 WL 314028 (1992) (operation of gasoline service stations over 10-year period); *Wolk v. United States*, 1984 WL 706 (S.D.N.Y. 1984) (sales of construction services); *Courtney v. Commissioner*, 28 T.C. 658 (1957) (sales of goods in grocery business); *Estate of Klein v. Commissioner*, 537 F.2d 701 (2d Cir. 1976) (sales of goods through two manufacturing partnerships); *Fields v. Commissioner*, T.C. Memo. 1981-653, 1981 WL 11153 (1981) (sales of goods in liquor store). In *Ketchum v. Commissioner*, 697 F.2d 466 (2d Cir. 1982), *rev'g* 77 T.C. 1204 (1981), neither opinion reveals the nature of the taxpayer's business. But the issue in *Ketchum* was whether the taxpayer was eligible for "innocent spouse" relief under former § 6013(e), not the six-year statute of limitations under § 6501(e)(1)(A).

"principal business [was] the development and sale of lots in a subdivision." *Colony*, 26 T.C. 30, 31 (1956), *aff'd*, 244 F.2d 75 (6th Cir. 1957), *rev'd*, 357 U.S. 28, 30 (1958); *see also* 26 T.C. at 35-36 (findings regarding taxpayer's subdivision of land, development of property, and sales of lots in 1946, 1947, and 1950). Here, it is stipulated that the Partnership was not engaged in the trade or business of selling ranches. There is no analogy whatsoever to *Colony*.

Under section 6501(e)(1)(A)(i), enacted in the 1954 Code, or *Colony*, decided under the 1939 Code, the result is the same.[56] As the Partnership was not in the business of buying and selling ranches, the gross income stated in, and omitted from, the 12/31/99 Partnership Return is measured by reference to the net gain, not the gross receipts, from the sale of the Ranch.

In short, section 6501(a) excludes the 12/31/99 Partnership Return from consideration in determining whether the Leadbetters' 1999 Form 1040 omitted gross income exceeding 25 percent of the income stated in the return. Even if that were not so, the Leadbetters' claim that the 12/31/99 Partnership Return reflects no omission of gross income under § 6501(e)(1)(A) is unfounded and contrary to law. Therefore, the 12/31/99 Partnership Return in no way alters the conclusion that the 25 percent omission-of-income test under § 6501(e)(1)(A) is met.

7. *Even If the Court Takes the 12/31/99 Partnership Return into Consideration, There Still Is No Adequate Disclosure of the Leadbetters' Artificial Basis-Inflation Scheme*.

As noted, for purposes of determining whether the adequate disclosure exception under § 6501(e)(1)(A)(ii) is met, section 6501(a) excludes the 12/31/99 Partnership Return from consideration. But even if the 12/31/99 Partnership Return is taken into account, along with the Leadbetters' 1999 Form 1040, there still is no adequate disclosure of the Leadbetters' artificial

[56] We by no means suggest that § 6501(e)(1)(A) and *Colony* yield equivalent results in all circumstances. *See, e.g.*, *CC&F*, 273 F.3d at 407.

basis-inflation scheme. The Leadbetters' 1999 Form 1040, as explained above, fails to disclose the following material transactional facts:

- Valley Garden's short sale of U.S. Treasury Notes on July 10, 1998.
- Valley Garden's transfer of the short position and the cash short sale proceeds to the Partnership on July 13, 1998.
- The Partnership's closing of the short sale on July 16, 1998.
- Valley Garden's transfer of the Ranch to the Partnership, effective December 31, 1998.
- Valley Garden's transfer of a 98.47992 percent interest in the Partnership to Win-Del on June 30, 1999.
- The Partnership's sale of the Ranch, with an alleged (but vastly inflated) basis of $5,465,378, for $6,700,000 on July 15, 1999.

Although it reports the sale of the Ranch in cursory fashion, the 12/31/99 Partnership Return discloses none of the other key facts above.[57] And the 12/31/99 Partnership Return gives no hint that the $1,234,622 reported gain from the sale of the Ranch is understated by over $5 million. As it discloses neither the amount of the omitted gain, nor the nature of the artificial basis-inflation scheme that caused the omission, the 12/31/99 Partnership Return does nothing to bridge the gap between the inadequate contents of the Leadbetters' 1999 Form 1040 and the adequate disclosure that § 6501(e)(1)(A)(ii) requires.

---

[57] Whether the IRS could have learned of these undisclosed facts by examining the sale of the Ranch is beside the point. The adequate disclosure inquiry focuses exclusively on the information the taxpayer chooses (or not) to disclose "in the return, or in a statement attached to the return," § 6501(e)(1)(A)(ii), not extrinsic information that may later come to light after the return is filed. *In re G-I Holdings Inc.*, 2006 WL 3511150, *2 (D.N.J. Dec. 5, 2006) (adequacy of disclosure does not depend on what an "IRS agent may have discovered about the . . . [t]ransaction had he or she decided, based on various unconnected entries in the . . . [r]eturn, to embark on a full-scale and exhaustive investigation").

**Additionally, or in the Alternative, the United States**
**Is Entitled to the Six-Year Period under § 6229(c)(2).**

Even if the six-year limitation period under § 6501(e)(1)(A) does not apply, section 6229 grants the United States at least a six-year statute of limitations for assessing additional tax against the Leadbetters. In pertinent part, section 6229 provides:

> (a) General Rule.– Except as otherwise provided in this section, the period for assessing any tax imposed by subtitle A with respect to any person which is attributable to any partnership item (or affected item) for a partnership taxable year ***shall not expire before*** the date which is 3 years after the later of –
>
> (1) the date on which the partnership return for such taxable year was filed, or
>
> (2) the last day for filing such return for such year (determined without regard to extensions).
>
> * * * * *
>
> (c) Special Rule in Case of Fraud, Etc.–
>
> * * * * *
>
> (2) Substantial Omission of Income.– If any partnership omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in its return, subsection (a) shall be applied by substituting "6 years" for "3 years."

26 U.S.C. §§ 6229(a), 6229(c)(2) (emphasis added).

Section 6229(a) establishes "a minimum period during which the period for tax assessments for partnership items may not end. This minimum period may expire before or after the maximum period provided in § 6501." *AD Global Fund, LLC v. United States*, __ F.3d __, 2007 WL 624366 at *3 (Fed. Cir. March 2, 2007). As the Federal Circuit recently explained, section "6229(a) does not create an independent statute of limitations," but rather, in certain circumstances "may extend the regular statute of limitations in § 6501(a) for assessments to

individual partners." *Id*.[58]

Because the 12/31/99 Partnership Return was filed on April 15, 2000, but the last day for filing the 12/31/99 Partnership Return (determined without regard to extensions) was April 17, 2000, the minimum period under § 6229(a) ran through April 17, 2003.[59] The IRS assessed no additional tax against the Leadbetters for the 1999 tax year before April 17, 2003.

Section 6229(c)(2) prescribes a six-year minimum period, however, when a partnership's return omits an amount of gross income exceeding 25 percent of the gross income stated in the return. The 25 percent omission-of-income test under § 6229(c)(2), like the analogous calculation under § 6501(e)(1)(A), can be stated as a simple fraction.

$$\frac{\text{Amount of Omitted Gross Income}}{\text{Gross Income Stated in the Return}}$$

If the fraction exceeds 25 percent, the six-year minimum period under § 6229(c)(2) applies. The following entries on the 12/31/99 Partnership Return (Form 1065) supply the "gross income stated in the return" under § 6229(c)(2).

---

[58] Because the limitation period under § 6501(e)(1)(A) remains open, as discussed above, there technically is no need to consider § 6229. Nevertheless, inasmuch as the Leadbetters address § 6229 in their brief, we take this opportunity to clarify how § 6229 works.

[59] Ordinarily partnership returns filed on the basis of a calendar year are due on April 15 of the next calendar year. 26 U.S.C. § 6072(a). Because April 15, 2000 fell on a Saturday, the 12/31/99 Partnership Return was due on April 17, 2000.

| Item | Form 1065 Line | Amount |
|---|---|---|
| Gross trade or business receipts | 1c | $ 869,553[60] |
| Interest income | Sch. K, line 4a | 2,943 |
| Ordinary dividends | Sch. K, line 4b | 4,125 |
| Gain from Ranch sale | Sch. K, line 6 | 1,234,622 |
| Total gross income stated in the return under § 6229(c)(2) | | $2,111,243 |

Turning to the numerator of the § 6229(c)(2) fraction, it is stipulated for summary judgment purposes that the adjusted basis of the Ranch, reported as $5,465,378 by the Partnership, must be reduced by $5,012,861 in the event the Court sustains the United States' position in this matter. The basis reduction, in turn, increases the Partnership's gain on the sale by $5,012,861, from the $1,234,622 gain reported by the Partnership to $6,247,483. Given the $5,012,861 understatement of the gain, the § 6229(c)(2) fraction is computed as follows.

$$\frac{\text{Amount of Omitted Gross Income}}{\text{Gross Income Stated in the Return}} = \frac{\$5{,}012{,}861}{\$2{,}111{,}243} = 237 \text{ percent}$$ [61]

Because the omission-of-income fraction exceeds 25 percent, the United States is entitled to the six-year period under § 6229(c)(2). The six-year period ran through April 17, 2006, six years after the last date for filing the 12/31/99 Partnership Return. On April 6, 2006, ***before*** the

---

[60] Although § 6229(c)(2) contains no trade or business exception similar to that set forth under § 6501(e)(1)(A)(i), we use the Partnership's reported gross receipts from its ranching business, without reduction for cost of goods sold, in the computation above. Using the Partnership's reported gross profit of $391,252, net of cost of goods sold (Form 1065, line 2), increases the fraction somewhat. But the difference is immaterial because, in either event, the resulting fraction far exceeds 25 percent. Accordingly, this case does not require the Court to consider whether § 6229(c)(2) has an implicit trade or business exception.

[61] Appendix 2 hereto sets forth this calculation in greater detail. If the Partnership's reported gross profit of $391,252, net of cost of goods sold (Form 1065, line 2), is used in the denominator, the gross income stated in the return decreases to $1,632,942, and the resulting fraction increases to approximately **307 percent** ($5,012,861 ÷ $1,632,942).

six-year period had run, the IRS timely issued the FPAA. Under section 6229(d), the FPAA suspends the running of the six-year period until the Court renders its final judgment in this proceeding, plus one year thereafter. 26 U.S.C. § 6229(d). As a result, the statute of limitations on the assessment of additional tax against the Leadbetters, arising from the Partnership's understatement of the gain from selling the Ranch, remains open for the 1999 tax year.

The Leadbetters argue to no avail that the six-year period under § 6229(c)(2) does not apply because the 12/31/99 Partnership Return adequately disclosed the nature of their artificial basis-inflation scheme and the amount of the $5,012,861 omitted gain. (Pl. Memo 11.) Section 6229(c)(2) is silent as to whether it has an adequate disclosure exception similar to that provided by § 6501(e)(1)(A)(ii).[62] Even assuming § 6229(c)(2) has such a safe harbor, the 12/31/99 Partnership Return fails to meet the adequate disclosure standard for the reasons stated in the preceding section of this brief.

\\

\\

\\

\\

\\

\\

\\

\\

---

[62] *See CC&F*, 273 F.3d at 407 ("[I]t is debatable whether this adequate disclosure safe harbor [under section 6501(e)(1)(A)(ii)] should even be read into section 6229(c), which is applicable here and contains no such language.").

## CONCLUSION

For the reasons set forth above, the Court should deny the Leadbetters' motion for summary judgment, and grant the United States' cross-motion for partial summary judgment, regarding the limitation periods under 26 U.S.C. §§ 6501(e)(1)(A) and 6229(c)(2).

Date: April 11, 2007

Respectfully submitted,

/s/ Richard G. Jacobus

RICHARD G. JACOBUS
Attorney of Record
U.S. Department of Justice, Tax Division
Post Office Box 403
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-0553
Telefax: (202) 307-2504
EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims
DAVID R. HOUSE
Of Counsel

Counsel for Defendant