**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **LEADBETTER FAMILY LLP, and** | **§** | |
| **DEBORAH LEADBETTER,** | **§** | |
| **as Tax Matters Partner,** | **§** | |
| | **§** | |
| **Plaintiffs,** | **§** | |
| | **§** | **NO. 06-492T (Judge Hodges)** |
| **v.** | **§** | |
| | **§** | |
| **UNITED STATES OF AMERICA,** | **§** | |
| | **§** | |
| **Defendant.** | **§** | |

**REPLY MEMORANDUM IN SUPPORT OF UNITED STATES' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING LIMITATION PERIODS UNDER 26 U.S.C. §§ 6501(e)(1)(A) AND 6229(c)(2)**

As our opening brief explains, plaintiff Deborah Leadbetter, her husband, Dan Leadbetter (the “Leadbetters”), and various family members not before the Court, through Leadbetter Family LLP (the “Partnership”) and other Leadbetter-controlled entities, sold a Montana ranch (the “Ranch”) in 1999 for $6,700,000. On the theory the adjusted basis of the Ranch was $5,465,378 when it was sold, the Partnership reported a $1,234,622 gain on its 1999 partnership return (Form 1065), and the Leadbetters, in turn, reported $971,248 as their share of that gain on their 1999 individual tax return (Form 1040). But the alleged $5,465,378 basis of the Ranch is an economic illusion, invented through an artificial basis-inflation scheme commonly known in tax circles as a Son of Boss transaction, that overstates the actual basis by at least $5,012,861. The United States contends the Partnership recognized a taxable gain of at least $6,247,483 from the sale of the Ranch, of which the Leadbetters’ share was $4,914,753. As a result, the United States seeks to adjust the Partnership’s reported gain and assess additional tax against the Leadbetters for the

1999 tax year.[1]

With their summary judgment motion, the Leadbetters ask the Court to hold that the three-year statute of limitations on assessment under 26 U.S.C. § 6501(a), and the three-year period relating to adjustments to partnership items under 26 U.S.C. § 6229(a), have both expired for the 1999 tax year. The Leadbetters are wrong, however, because the six-year limitation period under § 6501(e)(1)(A), or, alternatively, the six-year period under § 6229(c)(2), apply to the 1999 tax year. As a consequence, the adjustment to the Partnership's reported gain and the assessment of additional tax against the Leadbetters are not time-barred. Thus, for the reasons given in our opening brief, the Court should deny the Leadbetters' summary judgment motion.

The Leadbetters' reply brief does nothing to bolster their summary judgment motion and, in fact, confirms that the United States is entitled to the six-year periods under §§ 6501(e)(1)(A) and 6229(c)(2) as a matter of law. Of most significance, the Leadbetters concede they attempted

---

[1] *See* Memorandum in Support of United States' Response to Plaintiffs' Motion for Summary Judgment, and United States' Cross-Motion for Partial Summary Judgment, Regarding Limitation Periods under 26 U.S.C. §§ 6501(e)(1)(A) and 6229(c)(2), filed April 11, 2007 ("US Memo"), at 3-15. Other pertinent submissions include the Memorandum in Support of Plaintiffs' Motion for Summary Judgment, filed February 1, 2007 ("Pl. Memo"); Plaintiffs' Proposed Findings of Uncontroverted Fact, filed February 1, 2007 ("Pl. Fact"); the Declaration of Deborah Leadbetter in Support of Plaintiffs' Motion for Summary Judgment, dated January 25, 2007 ("Leadbetter Decl."); the United States' Response to Plaintiffs' Proposed Findings of Uncontroverted Fact and Additional Proposed Findings of Uncontroverted Fact, filed April 11, 2007 ("US Fact"); the Stipulation dated March 21, 2007 ("Stip."); Plaintiffs' Response to Defendant's Cross-Motion for Summary Judgment and Reply Memorandum in Support of Plaintiffs' Motion for Summary Judgment, filed May 14, 2007 ("Pl. Reply"); and Plaintiffs' Response to Defendant's Additional Proposed Findings of Uncontroverted Fact, filed May 14, 2007 ("Pl. Fact Resp."). Although reference is made herein to "partners," the "Partnership," related entities, and various events comprising the disputed transaction, the United States does not concede the legal existence of a viable partnership or the related entities. We reserve the right to establish at the trial on the merits that any or all of the legal entities and events described herein should be recharacterized, or set aside and ignored, for federal income tax purposes.

to artificially inflate the Ranch's basis by over $5 million, and that the linchpin of this scheme – a transitory short sale of U.S. Treasury Notes executed on July 10, 1998 and closed a mere six days later on July 16, 1998 – is disclosed nowhere on any tax return before the Court.[2]

The Leadbetters err in other ways as well. Among other things, they ask the Court to:

- Hold that an outdated Treasury regulation overrides the plain, unambiguous language of an Act of Congress.
- Distort the definition of "trade or business" gross income under § 6501(e)(1)(A)(i) in a manner that would cause this narrow exception to engulf the general definition of gross income under § 61 of the Code.
- Misconstrue the holding in *Colony, Inc. v. Commissioner*, 357 U.S. 28 (1958), to encompass § 6501(e)(1)(A)(i), a provision not even before the Supreme Court insofar as its enactment postdated by several years the events at issue in *Colony*.

We rebut these preposterous contentions below.

All the material facts relating to the disputed transaction are undisputed or stipulated for summary judgment purposes.[3] Likewise undisputed are the contents of the 1999 tax returns filed by the Leadbetters and the Partnership, which speak for themselves. As there are no genuine issues of material fact, and the United States is entitled to judgment as a matter of law for the reasons set forth herein and in our opening brief, the Court should grant the United States' cross-motion for partial summary judgment regarding the limitation periods under §§ 6501(e)(1)(A) and 6229(c)(2).

---

[2] Pl. Reply 15-16 (admission that short sale purportedly increased basis of Ranch, but is undisclosed on returns); *id*. at 20 (to same effect).

[3] Pl. Fact Resp. *passim* (no objection to uncontroverted facts presented by United States).

# TABLE OF CONTENTS

ARGUMENT IN REPLY .......... 4

Given the Leadbetters' Admitted Failure to Disclose the Short Sale that Allegedly Inflated the Ranch's Basis by Over $5 million, the Adequate Disclosure Requirement Is Not Met .......... 4

In Determining Whether the Adequate Disclosure Requirement Is Met, the Leadbetters' Form 1040 Is the Only "Return" at Issue .......... 11

The Sale of the Ranch Was Not a Sale of "Goods" Within the Meaning of § 6501(e)(1)(A)(i) .......... 18

The Supreme Court's *Colony* Decision Is Inapposite .......... 19

CONCLUSION .......... 20

# TABLE OF AUTHORITIES

## CASE LAW

*AD Global Fund, LLC v. United States*,
__ F.3d __, 2007 WL 624366 (Fed. Cir. March 2, 2007) .......................................... 17

*Badaracco v. Commissioner*, 464 U.S. 386 (1984) ................................................ 10, 13-15, 20

*Badaracco v. Commissioner*, 693 F.2d 298, 302 (3d Cir. 1982),
*aff'd*, 464 U.S. 386 (1984) ........................................................................ 10, 14

*BedRoc Ltd., LLC v. United States*, 541 U.S. 176 (2004) ........................................ 12

*Bishop v. United States*, 338 F.Supp. 1336 (N.D. Miss. 1970),
*aff'd without opinion*, 468 F.2d 950 (5th Cir. 1972) ................................................ 10

*Bufferd v. Commissioner*, 506 U.S. 523 (1993) ...................................................... 10, 12-14

*CC&F Western Operations Ltd. P'ship v. Commissioner*,
273 F.3d 402 (1st Cir. 2001), ........................................................................ 6-7, 19

*Caldera v. J.S. Alberici Constr. Co.*, 153 F.3d 1381 (Fed. Cir. 1998) .................... 12

*Caulfield v. Commissioner*, 33 F.3d 991 (8th Cir. 1994) ........................................ 9

*Colony, Inc. v. Commissioner*, 357 U.S. 28 (1958) ................................................ 3, 6, 19-20

*Commissioner v. Lane-Wells Co.*, 321 U.S. 219 (1944) .......................................... 8

*Connell Business Co. v. Commissioner*,
T.C. Memo. 2004-131, 2004 WL 1194626 (2004) .................................................. 18

*E.I. Dupont de Nemours & Co. v. Davis*, 264 U.S. 456 (1924) ............................... 10

*Estate of Frane v. Commissioner*, 98 T.C. 341 (1992),
*aff'd in part and rev'd in part*, 998 F.2d 567 (8th Cir. 1993) .................................. 7, 20

*Estate of Fry v. Commissioner*, 88 T.C. 1020 (1987) ............................................ 7, 20

*Estate of Kluener v. Commissioner*, 154 F.3d 630 (6th Cir. 1998) .......................... 9

*Estate of Whitlock v. Commissioner*, 59 T.C. 490 (1972) ....................................... 7

*Goldring v. Commissioner*, 20 T.C. 79 (1953) ........................................................ 10

*Gouveia v. Commissioner*, T.C. Memo. 2004-256, 2004 WL 2526251 (2004) ....... 18

*Grapevine Imports, Ltd. v. United States*, 71 Fed.Cl. 324 (2006) ........................... 13, 20

*Gustafson v. Alloyd Co.*, 513 U.S. 561 (1995) ........................................................ 14

*Gutierrez v. Ada*, 528 U.S. 250 (2000) ................................................................... 14

*Harlan v. Commissioner*, 116 T.C. 31 (2001) ........................................................ 17-18

*Helvering v. Mitchell*, 303 U.S. 391 (1938) ............................................................ 8

*Hinck v. United States*, 550 U.S. __, 2007 WL 1461153 (May 21, 2007) ............... 16

*Houston v. Commissioner*, 38 T.C. 486 (1962) ....................................................... 10

*In re G-I Holdings Inc*., 2006 WL 2595264 (D.N.J. 2006) ..................................... 7, 18

*In re G-I Holdings Inc*., 2006 WL 3511150 (D.N.J. 2006) ..................................... 8, 11

*In re Lilly*, 76 F.3d 568 (4th Cir. 1996) .................................................................. 19-20

*Insulglass Corp. v. Commissioner*, 84 T.C. 203 (1985) .......................................... 7, 10, 20

*Lane v. United States*, 286 F.3d 723 (4th Cir. 2002) ............................................... 9

*Lawson v. Commissioner*, T.C. Memo. 1994-286, 1994 WL 273946 (1994) .......... 19-20

*Mel Dar Corp. v. Commissioner*, T.C. Memo. 1960-56, 19 T.C.M. 290 (1960), *remanded on unrelated ground*, 309 F.2d 525 (9th Cir. 1962) ................................ 10

*Miller v. Commissioner*, T.C. Memo. 1992-612, 1992 WL 279823 (1992) ............ 7

*Norfolk Dredging Co. Inc. v. United States*, 375 F.3d 1106 (Fed. Cir. 2004) .......... 13

*O'Gilvie v. United States*, 519 U.S. 79 (1996) ........................................................ 10

*Phinney v. Chambers*, 392 F.2d 680 (5th Cir. 1968) ............................................... 6-7, 20

*Reuter v. Commissioner*, T.C. Memo. 1985-607, 1985 WL 15225 (1985) ............. 18

*Schneider v. Commissioner*, T.C. Memo. 1985-139,
1985 WL 14754, 49 T.C.M. (CCH) 1032, 1034 (1985) .......................................... 20

*Soriano v. United States*, 352 U.S. 270 (1957) ....................................................... 10

*Taylor v. United States*, 417 F.2d 991 (5th Cir. 1969) ............................................ 11, 18

*United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235 (1989) .......................... 13

*Weinberger v. Hynson, Westcott & Dunning, Inc.*, 412 U.S. 609 (1973) ................ 16

*West Virginia Univ. Hospitals, Inc. v.Casey*, 499 U.S. 83 (1991) ........................... 12

STATUTES, REGULATIONS, AND RULES

Pub. L. No. 105-34, § 1239(b), 111 Stat. 788, 1027-28 (1997) ............................... 16

Pub. L. No. 105-34, § 1284, 111 Stat. 788, 1038 (1997) ......................................... 12

26 U.S.C. § 61 .......................................................................................................... 3, 19

26 U.S.C. § 275 (Internal Revenue Code of 1939) .................................................. 19

26 U.S.C. § 701 ........................................................................................................ 13, 15

26 U.S.C. § 702 ........................................................................................................ 13

26 U.S.C. § 752 ........................................................................................................ 4

26 U.S.C. § 1014 ...................................................................................................... 6

26 U.S.C. § 1231 ...................................................................................................... 8

26 U.S.C. § 1363 ...................................................................................................... 13

26 U.S.C. § 1366 ...................................................................................................... 13

26 U.S.C. § 6226 ...................................................................................................... 16

26 U.S.C. § 6229 ...................................................................................................... 2-3, 16-17

26 U.S.C. § 6501 .......................................................................................... *passim*

26 U.S.C. § 6532 .......................................................................................... 9

26 C.F.R. § 1.702-1(c)(2) ............................................................................... 12

26 C.F.R. § 301.6231(a)(3)-1 ......................................................................... 16

25 Fed. Reg. 11,867 (Nov. 26, 1960) ............................................................ 12

OTHER AUTHORITIES

Hale E. Sheppard, *Only Time Will Tell: The Growing Importance of the Statute of Limitations in an Era of Sophisticated International Tax Structuring*, 30 Brook. J. Int'l L. 453 (2005) .............................. 9

# ARGUMENT IN REPLY

**Given the Leadbetters' Admitted Failure to Disclose the Short Sale that Allegedly Inflated the Ranch's Basis by Over <u>$5 Million, the Adequate Disclosure Requirement Is Not Met</u>.**

As our opening brief explains, the Leadbetters' 1999 Form 1040 fails to disclose the following material transactional facts.[4]

- ■ Valley Garden's short sale of U.S. Treasury Notes on July 10, 1998, its transfer of the short position and the cash short sale proceeds to the Partnership on July 13, 1998, and the Partnership's closing of the short sale on July 16, 1998.
- ■ Valley Garden's transfer of the Ranch to the Partnership, effective December 31, 1998.
- ■ Valley Garden's transfer of a 98.47992 percent interest in the Partnership to Win-Del on June 30, 1999.
- ■ The Partnership's sale of the Ranch, with an alleged basis of $5,465,378, for $6,700,000 on July 15, 1999.

These facts are stipulated or otherwise not contested by the Leadbetters. Additionally, two key conclusions that flow from these undisputed facts are stipulated for purposes of the parties' cross-motions for summary judgment.[5]

- ○ The short position assumed by the Partnership on July 13, 1998 was a liability within the meaning of 26 U.S.C. § 752.
- ○ The adjusted basis of the Ranch at the time of its sale on July 15, 1999, reported as $5,465,378 by the Partnership, must be reduced by $5,012,861.16 in the event the Court sustains the United States' position in this matter.

In their reply brief, the Leadbetters concede the short sale transaction was "one item that affected [the] basis" of the Ranch that was reported in the 12/31/99 Partnership Return. (Pl.

---

[4] *See* US Memo at 3-8, 26. It is undisputed that Valley Garden, an S corporation, and Win-Del, a purported partnership, were controlled by the Leadbetters at all relevant times.

[5] *See* US Fact ¶¶ 47-48; Stip. ¶¶ 5-6.

Reply 15.) The Leadbetters likewise concede that the short sale transaction is disclosed nowhere on any tax return before the Court. (*Id*. at 16, 20.) These concessions are fatal.

Substance, not form, governs federal income taxation. Courts, recognizing this principle, agree that a return must disclose a transaction's substance, not its mere form as conceived by the taxpayer, to meet the adequate disclosure requirement under § 6501(e)(1)(A)(ii). To the many authorities that support this conclusion, examined at length in our opening brief, the Leadbetters have no reply whatsoever.[6] With their silence, the Leadbetters abandon any pretense of opposition to this self-evident rule of law.

To unravel the Leadbetters' artificial basis-inflation scheme, one must look to its true economic substance. The short sale transactions, the Leadbetters now concede, are the key to understanding the actual substance of the Ranch's sale. Because their 1999 Form 1040 contains not even a remote hint that the short sale transactions took place, the Leadbetters fail to meet the adequate disclosure requirement.

Despite conceding the inadequate disclosure in their Form 1040, the Leadbetters cling to the notion that the 12/31/99 Partnership Return's disclosure of the $6,700,000 gross sale price of the Ranch, without more, is somehow "adequate" under § 6501(e)(1)(A)(ii). (Pl. Reply 14.) But the Leadbetters are wrong.

In the first place, for the reasons given below and in our opening brief, section 6501(a) forecloses consideration of the 12/31/99 Partnership Return for purposes of determining whether the Leadbetters adequately disclosed their artificial basis-inflation scheme. And even assuming the Court could properly take the 12/31/99 Partnership Return into consideration, the mere

[6] *Compare* US Memo 26-35 *with* Pl. Reply *passim*.

reporting of gross sale proceeds in that return falls far short of what the law requires.

With one narrow exception, inapplicable here, a return that discloses the gross sale proceeds, without more, does not meet the adequate disclosure requirement.[7] In *Phinney v. Chambers*, 392 F.2d 680 (5th Cir. 1968), the taxpayer's return correctly reported the gross proceeds from a sale of stock. *Id*. at 682. No gain was reported, however, because the return also reported a basis in the stock equal to the gross sale proceeds. The reported basis originated in part from a basis step-up that the taxpayer claimed upon her husband's death. *Id*. at 682-83; *see* 26 U.S.C. § 1014 (providing that basis of property received from decedent is stepped up to fair market value at date of death). More than three years after the return was filed, the IRS denied the claimed basis step-up and issued a deficiency notice. Relying on *Colony*, 357 U.S. 28 – as the Leadbetters do here – the taxpayer argued that the six-year period under § 6501(e)(1)(A) did not apply because a return omits no gross income when it reports the correct amount of gross sale proceeds. *Phinney*, 392 F.2d at 683. The Fifth Circuit disagreed.

*Colony* did not address § 6501(e)(1)(A)(ii), enacted as part of the 1954 Code. Rather, a predecessor statute, section 275(c) of the 1939 Code, which contained ***no*** adequate disclosure language, was at issue. Accordingly, case law predating the 1954 Code, including *Colony*, is simply inapposite to the adequate disclosure inquiry under current law. *See CC&F Western Operations Ltd. P'ship v. Commissioner*, 273 F.3d 402, 407 (1st Cir. 2001).

Recognizing this crucial distinction in *Phinney*, the Fifth Circuit "conclude[d] that the enactment of [the adequate disclosure exception in] subsection (ii) as a part of section

[7] The inapplicable exception, discussed below, applies to trade or business gross income under § 6501(e)(1)(A)(i).

6501(e)(1)(A) makes it apparent that the six year statute is intended to apply where there is either a complete omission of an item of income of the requisite amount or ***misstating of the nature of an item of income***." *Phinney*, 392 F.2d at 685 (emphasis added). On that reasoning, the Fifth Circuit held that the taxpayer's disclosure of gross sale proceeds did not meet the adequate disclosure requirement under § 6501(e)(1)(A)(ii). *Phinney*, 392 F.2d at 685.[8]

Disclosing the Ranch's gross sale price is not enough. The Leadbetters can point to nothing – for there is nothing – in the 12/31/99 Partnership Return that discloses the short sale transactions, nor the other key facts animating their artificial basis-inflation scheme. Courts agree that "a taxpayer seeking the benefit of a disclosure in or on a tax return to avoid the 6-year statute [under § 6501(e)(1)(A)] must not be niggardly or as here misleading in the statement of facts" in the tax return. *Estate of Fry v. Commissioner*, 88 T.C. 1020, 1023 (1987).[9] As it fails to disclose the material transactional facts, the 12/31/99 Partnership Return does not insulate the Leadbetters from the six-year limitation period under § 6501(e)(1)(A).

---

[8] Similarly, in *Estate of Fry v. Commissioner*, 88 T.C. 1020 (1987), the taxpayer disclosed the gross sale price, but failed to meet the adequate disclosure requirement because the return omitted several other material facts of the installment sale transaction. *Fry*, 88 T.C. at 1022 (gross sale price disclosed on return); *id*. at 1023 (material facts not disclosed); *see also Estate of Frane v. Commissioner*, 98 T.C. 341, 356-57 (1992) (mere disclosure of gross sale price held inadequate where return omitted several material facts of transaction), *aff'd in part and rev'd in part on unrelated grounds*, 998 F.2d 567 (8th Cir. 1993).

[9] *See also Frane*, 98 T.C. at 356 (disclosure held "quite confusing and misleading when considered in the context of section 6501(e)(1)(A)(ii)" where return omitted several material facts of transaction); *CC&F*, 273 F.3d at 406-08 (no adequate disclosure where material facts omitted); *Phinney*, 392 F.2d at 681-86 (same); *In re G-I Holdings Inc*., 2006 WL 2595264, *7-8 (D.N.J. 2006) (same); *Estate of Whitlock v. Commissioner*, 59 T.C. 490, 492-94, 510-11 (1972) (same); *Insulglass Corp. v. Commissioner*, 84 T.C. 203, 205-08 (1985) (same); *Miller v. Commissioner*, T.C. Memo. 1992-612, 1992 WL 279823 (1992) (same). To these precedents, the Leadbetters have no response. (*Compare* US Memo 34 *with* Pl. Reply *passim*.)

Seeking to distract the Court from their inadequate disclosure, the Leadbetters urge that the "Defendant had 3 years to verify the reported cost [of the Ranch] and the Defendant's omission to do so should not be charged against the Plaintiffs." (Pl. Reply 15.)[10] They essentially ask the Court to excuse their nondisclosure on the theory the Commissioner, had he launched an exhaustive investigation, might have discovered the Leadbetters' artificial basis-inflation scheme before the three-year period under § 6501(a) expired. But adequate disclosure under § 6501(e)(1)(A)(ii) does not "speak to what a sophisticated IRS agent may have discovered about the . . . [t]ransaction had he or she decided, based on various unconnected entries in the . . . [r]eturn, to embark on a full-scale and exhaustive investigation." *In re G-I Holdings Inc*., 2006 WL 3511150, *2 (D.N.J. 2006). Laying the blame at the Commissioner's door, while absolving taxpayers from the consequences of their inadequate return disclosures, would undermine "the system of self-assessment which is so largely the basis of our American scheme of income taxation." *Commissioner v. Lane-Wells Co*., 321 U.S. 219, 223 (1944).[11]

Voluntary disclosure is the very bedrock of our federal tax system. By conditioning the normal three-year statute of limitations on adequate disclosure when major sums of unreported income are at stake, Congress sought to encourage greater tax return disclosure of unreported income. Via adequate disclosure, taxpayers have the opportunity to terminate their exposure to IRS audits in the normal three years, rather than six years. Therefore, section 6501(e)(1)(A)(ii)

---

[10] *See also id*. at 19 (arguing the incompletely reported Ranch's sale "is something that an auditor can verify as to the particulars (e.g., the holding period, the qualification for 26 U.S.C. § 1231 treatment, the gross receipts and the cost").

[11] *See also Helvering v. Mitchell,* 303 U.S. 391, 399 (1938) ("In assessing income taxes the Government relies primarily upon the disclosure by the taxpayer of the relevant facts. This disclosure it requires him to make in his annual return.").

gives taxpayers an incentive to voluntarily bring potentially controversial transactions to light for timely examination and determination of the proper tax treatment.[12]

If the taxpayer, spurning this incentive, fails to adequately disclose on her return the nature and amount of a substantial omitted gross income item, she is subject to the six-year statute of limitations. Failing to give the IRS this additional time would turn the nation's self-reporting tax system on its head. Rather than relying chiefly on taxpayers' voluntary reporting to initially identify substantial gross income omissions, the IRS would have to audit every tax return filed by every taxpayer. The federal budget could not bear such a system's cost,

---

[12] The intent of Congress to encourage full and voluntary disclosure by taxpayers is evidenced by the Code's other provisions that give the IRS an extended statute of limitations in which to investigate and assess a tax whenever the taxpayer is less than forthcoming. For example, section 6501(c)(1) provides an unlimited statute of limitations when the taxpayer files a fraudulent tax return. By definition, a fraudulent tax return lacks adequate disclosure. Similarly, section 6501(c)(3) gives the IRS an unlimited statute of limitations when the taxpayer files no tax return. No tax return means no disclosure, let alone adequate disclosure. And section 6532(b) extends from two to five years the time in which the Government may bring suit to recover an erroneous tax refund, "if it appears that any part of the refund was induced by fraud or misrepresentation of a material fact" by the taxpayer. *See* 26 U.S.C. § 6532(b); *Lane v. United States*, 286 F.3d 723 (4th Cir. 2002). With such laws, Congress requires taxpayers to provide more, not less, tax return disclosure of potentially controversial transactions.

In contrast, the Leadbetters' stingy approach to tax return disclosure, if sustained, would codify the well known but unlawful "audit lottery," whereby aggressive taxpayers gamble that undisclosed transactions may not come to light before the statute of limitations runs against the IRS. *See, e.g.*, *Estate of Kluener v. Commissioner*, 154 F.3d 630, 637 (6th Cir. 1998); *Caulfield v. Commissioner*, 33 F.3d 991, 994 (8th Cir. 1994). It takes little reflection to perceive the close correlation between adequate disclosure cases and the audit lottery. Given the 25% omission-of-income test under § 6501(e)(1)(A), it takes a significant unreported transaction to trigger the adequate disclosure inquiry. Taxpayers' overall rate of success in playing the audit lottery, in turn, depends heavily on how courts interpret and enforce the adequate disclosure requirement under § 6501(e)(1)(A)(ii). *See* Hale E. Sheppard, *Only Time Will Tell: The Growing Importance of the Statute of Limitations in an Era of Sophisticated International Tax Structuring*, 30 Brook. J. Int'l L. 453 (2005) (noting significance of six-year limitation period under § 6501(e)(1)(A) in IRS efforts to combat abusive tax shelter schemes).

and America's taxpayers would resent its intrusiveness.

Moreover, "[s]tatutes of limitation sought to be applied to bar rights of the Government, must receive a strict construction in favor of the Government." *Badaracco v. Commissioner,* 464 U.S. 386, 391 (1984).[13] Strictly construing § 6501(e)(1)(A)(ii), and requiring a far greater level of return disclosure than the Leadbetters have made, honors the intent of Congress to encourage greater voluntary disclosure by taxpayers. With that in mind, the Court should reject the Leadbetters' attempt to refocus the inquiry on whether the IRS should have detected their artificial basis-inflation scheme before the three-year period under § 6501(a) expired.

Buttressing this conclusion, case law holds that the Service's actual discovery and knowledge of gross income omitted from a tax return, before the three-year statute runs, is irrelevant to whether the return meets the adequate disclosure requirement. *Insulglass Corp. v. Commissioner*, 84 T.C. 203, 207 (1985).[14] The adequacy of the Leadbetters' disclosure was

---

[13] *See also E.I. Dupont de Nemours & Co. v. Davis*, 264 U.S. 456, 462 (1924); *Soriano v. United States*, 352 U.S. 270, 276 (1957); *O'Gilvie v. United States,* 519 U.S. 79, 92 (1996); *Bufferd v. Commissioner*, 506 U.S. 523, 527 n.6 (1993).

[14] *See also Bishop v. United States*, 338 F.Supp. 1336, 1349-53 (N.D. Miss. 1970), *aff'd without opinion*, 468 F.2d 950 (5th Cir. 1972); *Mel Dar Corp. v. Commissioner*, T.C. Memo. 1960-56, 19 T.C.M. 290, 314 (1960), *remanded on unrelated ground*, 309 F.2d 525 (9th Cir. 1962). Similarly, a taxpayer's later disclosure of additional information on an amended return does not retroactively make the original return disclosure adequate under § 6501(e)(1)(A)(ii). *Badaracco v. Commissioner*, 693 F.2d 298, 302 (3d Cir. 1982) ("Amended returns have no effect on the six year period.") (citing *Houston v. Commissioner*, 38 T.C. 486 (1962); *Goldring v. Commissioner*, 20 T.C. 79 (1953)), *aff'd*, 464 U.S. 386. And the extended limitation period under § 6501(c)(1), applicable when fraudulent tax return is filed, applies even though the taxpayer later files a nonfraudulent amended tax return. *Badaracco*, 464 U.S. at 394 ( "[A] taxpayer who submits a fraudulent return does not purge the fraud by subsequent voluntary disclosure; the fraud was committed, and the offense completed, when the original return was prepared and filed."); *id*. at 401 ("The fact that a fraudulent filer subsequently submits an amended return does not make the case any less one of a false or fraudulent return.").

fixed when they filed their tax return, and later events cannot make the original return disclosure more adequate under § 6501(e)(1)(A)(ii). Whether, in hindsight, the IRS could have discovered additional information from other sources is immaterial. As one court recently explained:

> [T]he adequate disclosure standard is not met by a retrospective demonstration that the transaction was not so well concealed that a competent IRS agent could not have unraveled the scheme given diligent efforts. Such a standard would turn the statute on its head and turn the inquiry from the adequacy of [the taxpayer's] disclosure to the effectiveness of its efforts at concealment.

*In re G-I Holdings Inc*., 2006 WL 3511150, *2 (D.N.J. 2006).[15] On like reasoning, and the other grounds stated herein and in our opening brief, the Court should hold as a matter of law that the Leadbetters did not adequately disclose their artificial basis-inflation scheme, and the resulting understatement of their gain from the Ranch's sale, as § 6501(e)(1)(A)(ii) requires.

**In Determining Whether the Adequate Disclosure Requirement Is Met, the Leadbetters' Form 1040 Is the Only "Return" at Issue.**

As we explain in our opening brief, the gross income stated, shown, or disclosed in the return under § 6501(e)(1)(A) is found solely on the Leadbetters' 1999 Form 1040.[16] Excluding the 12/31/99 Partnership Return from consideration, section 6501(a) provides, *inter alia*: "For purposes of this chapter, the term 'return' means the return required to be filed by the taxpayer (and does not include a return of any person from whom the taxpayer has received an item of income, gain, loss, deduction, or credit)." 26 U.S.C. § 6501(a).

The Leadbetters assert that our plain reading of § 6501(a)'s last sentence – defining the

---

[15] *See also Taylor v. United States*, 417 F.2d 991, 993 (5th Cir. 1969) ("[T]he Government is not to be penalized by a taxpayer's failure to reveal the facts. As Congress recognized, the Government cannot be required to act promptly on information that is not known to it.") (applying six-year statute).

[16] *See* US Memo 22-23.

"return" as that of the taxpayer/partner, not the related partnership – conflicts with a Treasury regulation, 26 C.F.R. § 1.702-1(c)(2). (Pl. Reply 9-10.) This argument lacks merit. Treas. Reg. § 1.702-1(c)(2) was promulgated in 1960.[17] Congress amended § 6501(a) to add the last sentence therein, quoted above, in 1997.[18] "Statutes trump conflicting regulations." *Caldera v. J.S. Alberici Constr. Co.*, 153 F.3d 1381, 1383 n.** (Fed. Cir. 1998).[19]

Relying on legislative history, the Leadbetters also argue that, by enacting the 1997 amendment to § 6501(a), Congress intended merely to clarify that the "return" that starts the running of the statute of limitations is the return filed by a partner or S corporation shareholder, not any return filed by a related partnership or S corporation, in accordance with the holding in *Bufferd v. Commissioner*, 506 U.S. 523 (1993). According to the Leadbetters, Congress did not intend to define which "return" a court must look to in order to determine when the statute of limitations ends. (Pl. Reply 6-7.) This argument fails for several reasons.

***First***, in construing § 6501(a), the Court's "inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) (internal quotation omitted). Courts should resort to legislative history and other extrinsic tools only if a statute's text is ambiguous.[20] Section 6501(a) reflects no ambiguity. It

---

[17] 25 Fed. Reg. 11,867 (Nov. 26, 1960).

[18] Pub. L. No. 105-34, § 1284(a), 111 Stat. 788, 1038 (1997).

[19] For the same reason, the case law cited by the Leadbetters is inapposite. (Pl. Reply 7 & n.12.) All the cited cases dealt with pre-1997 tax years, and none interpreted § 6501(e)(1)(A) in light of the 1997 amendment to section 6501(a).

[20] *See West Virginia Univ. Hospitals, Inc. v.Casey*, 499 U.S. 83, 98-99 (1991) ("The best evidence of [legislative] purpose is the statutory text adopted by both Houses of Congress and submitted to the President. Where that contains a phrase that is unambiguous – that has a clearly
(continued...)

clearly defines the pertinent "return" as the Leadbetters' 1999 Form 1040. As the statute's meaning "is plain, the sole function of the courts is to enforce it according to its terms." *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989) (internal quotation omitted).

***Second***, the Leadbetters acknowledge the 1997 amendment to § 6501(a) reflects the holding in *Bufferd*, but neglect to fully address the consequences. *Bufferd* itself confirms that the United States' reading of § 6501(a) is correct. In *Bufferd*, the Supreme Court addressed the pre-1997 version of § 6501(a), which pegged the applicable statute of limitations to the date on which "the return was filed," but did not specify whether the "return" in question was the Form 1040 filed by the S corporation shareholder, against whom the IRS had assessed the tax, or the Form 1120S filed by the related S corporation.[21] Sustaining the Commissioner's position, the Court held that the "return referred to in § 6501(a) is the return of the taxpayer against whom a deficiency is assessed." *Bufferd*, 506 U.S. at 527. Further, while it found the pre-1997 version of § 6501(a) unambiguous, the Court stated that it would uphold the Commissioner's interpretation even if the statute were ambiguous, because "'limitations statutes barring the collection of taxes otherwise due and unpaid are strictly construed in favor of the Government.'" *Id*. at 527 n.6 (quoting *Badaracco*, 464 U.S. at 392).

---

[20](...continued)
accepted meaning in both legislative and judicial practice – we do not permit it to be expanded or contracted by the statements of individual legislators or committees during the course of the enactment process."); *Norfolk Dredging Co. Inc. v. United States*, 375 F.3d 1106, 1110 (Fed. Cir. 2004); *Grapevine*, 71 Fed. Cl. at 336.

[21] S corporations, like partnerships, are pass-through entities. Like a partner in a partnership, a shareholder in an S corporation reports her share of the S corporation's items of income, gain, loss, deduction, or credit. *See* 26 U.S.C. §§ 701-702, 1363, 1366.

The pre-1997 version of § 6501(a) was arguably ambiguous. Certainly Congress, in the wake of *Bufferd*, perceived an ambiguity and amended § 6501(a) accordingly. Section 6501(a), as amended in 1997, is not at all ambiguous. Inasmuch as *Bufferd* instructed that the pre-1997 version of § 6501(a), if ambiguous, was to be strictly construed in the Commissioner's favor, the rule of strict construction applies with even greater force to the post-1997 version of § 6501(a).

***Third***, the 1997 amendment to § 6501(a) applies "[f]or purposes of this chapter," that is, Chapter 66 of the Code, 26 U.S.C. §§ 6501-6533. Reading the 1997 amendment to § 6501(a) to exclude its application to § 6501(e)(1)(A), as the Leadbetters urge, would accord the term "return" two different meanings – a broad meaning for purposes of § 6501(e) that would encompass not only the taxpayer's return but the returns of her pass-through entities as well, and a narrower meaning for purposes of § 6501(a) and the remainder of Chapter 66. Such an interpretation would violate the canon *noscitur a sociis*, literally "a word is known by the company it keeps." *Gustafson v. Alloyd Co*., 513 U.S. 561, 575 (1995). The term "return" appears dozens of times in section 6501. As the "subject of such relentless repetition," it must be presumed to have a consistent meaning. *Gutierrez v. Ada*, 528 U.S. 250, 255 (2000). On such reasoning, the Supreme Court and Third Circuit have held that § 6501(e)(1)(A) must be construed *in pari materia* with §§ 6501(c)(1) and 6501(c)(3).[22] *Badaracco*, 464 U.S. at 395-96 (interpretation of term "return" under sections 6501(c)(1) and 6501(e)(1)(A) must not yield inconsistent treatment of taxpayers); *Badaracco,* 693 F.2d at 302 (same); *id*. at 301 n.6 (sections 6501(c)(1) and 6501(c)(3) must be construed *in pari materia*). This rule of consistency also

---

[22] Section 6501(c)(1) provides an unlimited statute of limitations when the taxpayer files a fraudulent return, and § 6501(c)(3) does the same when the taxpayer files no return at all.

applies to the term "return" in §§ 6501(a) and 6501(e)(1)(A).[23]

Nothing in the text of § 6501 suggests the term "return" has multiple, conflicting meanings therein. Indeed, section 6501(a) expressly instructs to the contrary. For this reason, the Court should reject the Leadbetters' theory that the term "return" should be construed one way for purposes of § 6501(e)(1)(A), but another for purposes of § 6501(a) and the rest of Chapter 66. *See Badaracco*, 464 U.S. at 401 ("If the result contended for by [the taxpayer] is to be the rule, Congress must make it so in clear and unmistakable language.").

The Leadbetters also contend that our plain reading of § 6501(a) is at odds with the unified partnership proceedings (*i.e.*, TEFRA proceedings) prescribed by Subchapter C of Chapter 63 of the Code. In the Leadbetters' view, TEFRA proceedings require the returns of a partnership and its partners to be "analyzed as a whole," and that the "statute of limitations on assessments as it relates to partnership items . . . be determined in a unified proceeding that must, by its nature, consider the partnership return." (Pl. Reply 8.) Again, the Leadbetters are wrong.

The United States' position and the statutory framework for TEFRA proceedings are in complete harmony. Section 6501 prescribes the general statute of limitations on assessment that applies to partners (but not partnerships).[24] As noted, Congress amended § 6501(a) in the

[23] The Leadbetters incorrectly term this result "absurd." (Pl. Reply. 6.) There is nothing "absurd" about pegging the beginning and end of the statute of limitations that applies to an individual taxpayer under § 6501 to the same return – in this case, the Leadbetters' 1999 Form 1040. Likewise unpersuasive is the Leadbetters' scarecrow claim that "[p]artners may have no or limited information about the transactions of a partnership and may be incapable of providing disclosure on their personal return as the partnership's transactions." (Pl. Reply 5.) That is certainly not the case with the Leadbetters. They controlled the Partnership, Valley Garden, and Win-Del, and caused these entities to execute the artificial basis-inflation scheme.

[24] Partnerships are not subject to income tax. 26 U.S.C. § 701.

Taxpayer Relief Act of 1997 to exclude partnership returns from consideration in determining the partner-level statute of limitations on assessment. In the same legislation, recognizing that partners have a stake in asserting their personal statute of limitations defenses, Congress amended § 6229(d)(1) to allow a partner to participate in a TEFRA proceeding in order to assert such a defense, and granted "the court having jurisdiction of such action . . . jurisdiction to consider such assertion." 26 U.S.C. § 6226(d)(1).[25]

This jurisdictional grant would be redundant if the partner-level statute of limitations under § 6501, including the six-year period under § 6501(e)(1)(A), depended on the gross income reported in (or omitted from) the partnership return – a partnership item over which the courts independently exercise jurisdiction in TEFRA proceedings.[26] The Leadbetters' position thus offends "the well-settled rule of statutory construction that all parts of a statute, if at all possible, are to be given effect." *Weinberger v. Hynson, Westcott & Dunning, Inc.*, 412 U.S. 609, 633 (1973). It also defies logic to conclude that Congress simultaneously amended §§ 6501(a) and 6226(d)(1) in 1997 with the intention that the latter provision nullify the former.

---

[25] Pub. L. No. 105-34, § 1239(b), 111 Stat. 788, 1027-28 (1997). We have previously explained why Deborah and Dan Leadbetter are the only partners properly before the Court. (US Memo 19-21.) In reply, the Leadbetters suggest the Court may consider the statute of limitations defenses of Joel Leadbetter, Kirk Leadbetter, Jill Connolly, and John "Sam" Connolly, also alleged to be partners in the Partnership (the "Other Partners"), even though none of them has appeared in this action. (Pl. Reply 1 n.1.) The Other Partners cannot remain on the sidelines and piggyback on the statute of limitations defenses asserted by Deborah and Dan Leadbetter. As the Supreme Court instructed in a recent tax decision, the Other Partners cannot "deviate from [the] general rule that a party must assert his own legal rights and interests, and cannot base his claim to relief on the legal rights or interests of third parties." *Hinck v. United States*, 550 U.S. __, 2007 WL 1461153, *5 n.3 (May 21, 2007). Congress may prescribe exceptions to this general rule, and has done so in this instance. Before the Court can hear their statute of limitations defenses, the Other Partners first must "participate in [this] action," as § 6226(d)(1) requires.

[26] *See* 26 U.S.C. § 6226(f); 26 C.F.R. § 301.6231(a)(3)-1(a)(1)(i).

Moreover, Congress has spelled out the precise situation in which a partnership return's contents may affect a partner's statute of limitations under § 6501. Section 6229(a) prescribes a minimum three-year period that "may extend the regular statute of limitations in § 6501(a) for assessments to individual partners." *AD Global Fund, LLC v. United States*, __ F.3d __, 2007 WL 624366 at *3 (Fed. Cir. March 2, 2007). If a partnership return omits a substantial sum of gross income, section 6229(c)(2) extends this minimum limitation period to six years.

Given its limited function, section 6229(c)(2) plainly cannot supersede the general rule under § 6501(a). Under § 6501(a), the Partnership's return is irrelevant to whether the six-year partner-level statute of limitations under § 6501(e)(1)(A) applies to the Leadbetters. In applying the 25 percent omission-of-income test under § 6501(e)(1)(A)(i) and the adequate disclosure standard under § 6501(e)(1)(A)(ii), the only return that matters is the Leadbetters' 1999 Form 1040. If the six-year period under § 6501(e)(1)(A) applies, section 6229(c)(2) may further extend that period, but that is no reason to import the Partnership's return into the threshold analysis under § 6501(e)(1)(A), when § 6501(a) expressly forbids that approach.

Even assuming the 1997 amendment to § 6501(a) did not foreclose consideration of the Partnership's return, pre-1997 law led to the same result. Under pre-1997 law, the Partnership's return could not be taken into consideration under § 6501(e)(1)(A) unless the Partnership were "properly identified" in the Leadbetters' return. *Harlan v. Commissioner*, 116 T.C. 31, 38 (2001). Only two entries in the Leadbetters' return relate to their understated gain from the Ranch's sale, a $971,248 item on **(i)** Line 11 of Schedule D, Capital Gains and Losses, described as "gain from Form 4797," and **(ii)** Form 4797, Sales of Business Property, described as "FROM K-1." (Leadbetter Decl. Ex. D at Sch. D, Line 11; *id*. at Form 4797.) Neither entry hints the

Partnership is the source of the reported gain. As a result, even if pre-1997 law applied to this case, the Court must disregard the Partnership's return in determining whether § 6501(e)(1)(A) applies to the Leadbetters. *Taylor v. United States*, 417 F.2d 991 (5th Cir. 1969) (disregarding return of S corporation not properly identified in taxpayer's return).[27]

**The Sale of the Ranch Was Not a Sale of "Goods"**
**Within the Meaning of § 6501(e)(1)(A)(i).**

Our prior submissions demonstrate that the six-year period under § 6501(e)(1)(A) applies in this case, because the Leadbetters' 1999 Form 1040 omitted gross income that is roughly **363 percent** of the gross income stated in that return.[28] The Leadbetters do not quarrel with our arithmetic. Instead, relying on the "trade or business" exception under § 6501(e)(1)(A)(i), they argue there was no omission of gross income because the 12/31/99 Partnership Return reports the $6,700,000 gross sale price of the Ranch. But this exception, as previously explained, does not apply because the Ranch's sale was not a "sale of goods" under § 6501(e)(1)(A)(i).[29]

---

[27] *See also Reuter v. Commissioner*, T.C. Memo. 1985-607, 1985 WL 15225 (1985); *Connell Business Co. v. Commissioner*, T.C. Memo. 2004-131, 2004 WL 1194626 (2004); *Gouveia v. Commissioner*, T.C. Memo. 2004-256, 2004 WL 2526251 (2004); *compare Harlan*, 116 T.C. at 34 (identification by name, address, and tax identification number). A separate schedule in the Leadbetters' 1999 Form 1040, titled "Statement 2," identifies the Partnership and five other pass-through entities, but gives no hint as to which entity is the source of the understated gain from the Ranch's sale. Such disclosure does not properly identify the Partnership, since the reader must locate and examine multiple pass-through entity returns in order to ferret out which one is the source of the gain. Section 6501(e) "require[s] that the tax return reveal more than obscure, disconnected marks on a treasure map which the IRS was expected to decipher at its peril." *G-I Holdings*, 2006 WL 2595264 at *6.

[28] *See* US Memo 23-25, Appendix 1.

[29] *See* US Memo 38-43. Again, the Leadbetters have no response to the authorities we cite. (Pl. Reply *passim*.) In addition, as stated above, the Leadbetters err by contending the 12/31/99 Partnership Return may be considered under § 6501(e)(1)(A) in the first place.

Attempting to confuse the issue, the Leadbetters contend the Ranch's artificially inflated basis is an "overstated deduction," not a component of their omitted gross income. (Pl. Reply 15.) Even if true, this contention undercuts their claim that the Ranch was a "good." If the Ranch were a "good," its basis would be considered "cost of goods sold" ("COGS").[30] COGS is an component of gross income – ***not*** a "deduction" – because COGS is subtracted from gross sales to compute "gross income derived from business" under § 61(a)(2). *In re Lilly*, 76 F.3d 568, 572 (4th Cir. 1996); *see also Lawson v. Commissioner*, T.C. Memo. 1994-286, 1994 WL 273946, *4-6 (1994). It logically follows that if the Ranch's basis is a "deduction," the Ranch's basis is not COGS and the Ranch itself is not a "good."

**The Supreme Court's *Colony* Decision Is Inapposite.**

Unable to meet the requirements of § 6501(e)(1)(A)(i), the Leadbetters argue that *Colony*, 357 U.S. 28, defines the gross income from the Ranch's sale as the $6,700,000 gross sales price, and thus no omission exists. The Leadbetters exaggerate *Colony*'s holding, however.

Section 275(c) of the 1939 Code, at issue in *Colony*, contained no trade or business exception (nor an adequate disclosure exception) akin to § 6501(e)(1)(A). *See Colony*, 357 U.S. at 29 n.1 (text of former § 275(c)); *id*. at 37 n.3 (text of § 6501(e)(1)(A)). Section 6501(e)(1)(A)'s enactment confined *Colony* to its narrow facts. *See CC&F*, 273 F.3d at 407; *Lawson*, T.C. Memo. 1994-286, 1994 WL 273946 at *4 ("[W]ith respect to taxable years beginning after August 17, 1954, Congress . . . resolved the problem addressed in *Colony* . . . by enacting section 6501(e)(1)(A) of the 1954 Code.").

---

[30] As noted, the Leadbetters did not report the Ranch's basis as part of the COGS stated in Schedule A of the 12/31/99 Partnership Return. (US Memo 24.)

Extending the trade or business exception to all sales of property, not just "sales of goods" in the ordinary course of business, would **(i)** violate the tenet that § 6501(e)(1)(A) must be strictly construed in the Commissioner's favor, *Badaracco*, 464 U.S. at 391, **(ii)** cause the narrow trade or business exception to engulf the general definition of gross income from sales of property under § 61(a)(3), and **(iii)** render the trade or business exception superfluous. *See Grapevine*, 71 Fed.Cl. at 342 (applying *Colony*'s gross proceeds standard to all sales of property, contrary to § 6501(e)(1)(A), "would violate the canon that a legislature is presumed to have used no superfluous words" (internal quotation omitted)).[31]

Courts thus limit the trade or business exception under § 6501(e)(1)(A) to sales of "goods" in the ordinary course of business, and refuse to enlarge this exception to encompass sales of property generally. *Schneider v. Commissioner*, T.C. Memo. 1985-139, 49 T.C.M. (CCH) 1032, 1034-35 (1985); *Insulglass*, 84 T.C. at 208-10.[32] This Court should do likewise and reject the Leadbetters' claim that *Colony* loosens the requirements of § 6501(e)(1)(A)(i).

## CONCLUSION

For the reasons set forth above and in our opening brief, the Court should deny the Leadbetters' motion for summary judgment, and grant the United States' cross-motion for partial

[31] The Leadbetters rely on dicta in *Colony* to the effect the decision was "in harmony" with § 6501(e)(1)(A). (Pl. Reply 16-17, quoting *Colony*, 357 U.S. at 37.) But they overlook the reason why the result in *Colony* was in harmony with § 6501(e)(1)(A) – the taxpayer was in the business of selling residential lots, and thus would have met the trade or business exception under § 6501(e)(1)(A), had that provision then been in effect. Here, in contrast, it is stipulated that the Partnership was not engaged in the trade or business of selling ranches.

[32] *See also Lilly*, 76 F.3d at 572; *Lawson*, T.C. Memo. 1994-286, 1994 WL 273946 at *4; *Phinney*, 392 F.2d at 685; *Fry*, 88 T.C. at 1022-23; *Frane*, 98 T.C. at 356-57; *cf. CC&F*, 273 F.3d at 406 n.2.

summary judgment, regarding the limitation periods under 26 U.S.C. §§ 6501(e)(1)(A) and 6229(c)(2).

Date: June 1, 2007

Respectfully submitted,

/s/ Richard G. Jacobus

RICHARD G. JACOBUS
Attorney of Record
U.S. Department of Justice, Tax Division
Post Office Box 403
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-0553
Telefax: (202) 307-2504
EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims
DAVID R. HOUSE
Of Counsel

Counsel for Defendant